[Civ. No. 27167. Second Dist., Div. One. July 2, 1963.]

NEVCAL ENTERPRISES, INC., Plaintiff and Respondent, v. CAL-NEVA LODGE, INC., Defendant and Appellant.

800

Francis C. Whelan, United States Attorney, Walter S. Weiss, Herbert D. Sturman, Thomas H. McPeters, Loyal E. Kein and Jacqueline K. Levit, Assistant United States Attorneys, for Defendant and Appellant.

Lester William Roth for Plaintiff and Respondent.

LILLIE, J.—This is the second appeal in this case. The first resulted in a reversal of the judgment upon the ground that the contract in suit did not contravene the public policy of this state and was, therefore, enforceable in this jurisdiction. (*Nevcal Enterprises, Inc. v. Cal-Neva Lodge, Inc.*, 194 Cal.App.2d 177 [14 Cal.Rptr. 805].) Following the issuance of the remittitur, and by stipulation between all parties concerned, the United States, through its counsel, undertook the further representation of defendant's interests—the government had impounded money of the defendant in satisfaction of certain tax liabilities under an agreement that such money would be held subject to any judgment plaintiff might obtain in the present litigation. Judgment was entered in favor of plaintiff; defendant appeals.

The relevant facts are summarized in the prior opinion (194

Cal.App.2d 177, 178); "By agreement of August 29, 1955, defendant (who controlled the same through nominees) agreed to sell to plaintiff a certain building in Reno wherein it conducted a gambling casino under state license as well as a bar, restaurant and other activities. The base price having been fixed at $550,000, it was provided that the buyer should apply for and obtain gaming licenses and that thereupon the sale should be consummated and '[a]t the time of such consummation you [buyer] will be given credit for all profits from the date of acceptance of this proposal to the date of such consummation, and likewise shall suffer all losses during said period of time. If losses exist you shall pay the same at the time of the consummation of the sale.' Buyer forthwith applied for requisite gaming licenses and, pending their approval and issuance, the seller's nominee continued to operate the property, including the gambling hall, until November 11, 1955, when the United States Government put an end to it by seizing in satisfaction of tax liens against defendant some $30,000 in coins and currency on the gambling tables, emptying the slot machines and appropriating all money contained therein; it also attached the bank accounts of defendant in the sum of $23,000. This seizure resulted from failure of defendant to pay the approximate sum of $88,000 owing by it to the Government for delinquent taxes. The casino remained closed until December 1955, when plaintiff's licenses were granted and the gaming operations resumed. Between August 29 and November 11 the operations on the premises were profitable, the net income being $55,-470.90, the greater portion of which was derived from the gambling.

"Plaintiff sued for an accounting of said profits and for other relief. The trial judge held that this was a gambling contract opposed to the public policy of California, found that all other issues had become immaterial and denied any relief."

The "other issues" deemed immaterial are referred to in the footnote (p. 178); of importance to this appeal is the statement that the trial court made no finding respecting the issue of novation or as to the legality or unenforceability of the contract under Nevada law. The footnote further quotes the trial court as follows: " 'The defendant asserts no defense that the contract was not legal or unenforceable in the State of Nevada and no presumption is indulged in by the

Court that the law of Nevada is the same as the law of California on the question of enforceability.' "

Upon remand, however, government counsel's pretrial memorandum set forth defendant's intention to challenge the legality and enforceability of the subject contract under Nevada law by the introduction of the governing gaming statutes—the matter otherwise to be submitted upon the entire record of the first trial. Thereafter defendant's counsel moved the court in its law and motion department for permission to amend the answer to allege affirmatively such illegality. The motion (vigorously resisted by plaintiff) was denied without prejudice to its renewal upon assignment of the matter to a trial department for disposition of the entire controversy; among other arguments presented by counsel in opposition to the motion was the contention that there is a commonly recognized limitation upon the propriety of amendments, even after an unqualified reversal (as here) which sets the case at large, where the amendment encourages endless litigation by the introduction of a substantially new defense. (*Dressler* v. *Johnston,* 131 Cal.App. 690, 694, 695 [21 P.2d 969].)[1] The matter in due time having come on for trial, the court observed (by way of written memorandum) and subsequently concluded that the court took judicial notice of the Nevada law and therefore ''defendant's request to amend to set up a new and separate defense for the purpose of pleading Nevada law was unnecessary.''

Although the matter (by stipulation) was submitted and decided upon the entire record of the first trial, the only point urged by government counsel in their opening brief is the issue of the contract's legality under Nevada law. Their failure to say anything with respect to the other issue on the first trial, that of novation, may now properly be deemed to be an abandonment thereof. (*Loupias* v. *Rosen,* 102 Cal.App. 2d 781, 784 [228 P.2d 611].) At the outset, defendant's claim of illegality is directed only to that portion of the contract which deals with the division of profits derived from the gambling operation; accordingly, it is conceded that the remaining portions embracing the sale of the casino and the realty and personalty connected therewith are not within the

---

[1] To this contention defendant replies that the defense of illegality may be raised at any time—even on the court's own motion. (*Domenigoni* v. *Imperial Live Stock & Mortg. Co.,* 189 Cal. 467, 475-476 [209 P. 36].)

804

proscription of the applicable statutes. These statutes and various Nevada decisions are cited and extensively discussed by government counsel. It is argued that they support the twofold claim that an action for recovery of gambling profits may never be maintained in that jurisdiction and that an unlicensed person (which plaintiff is said to be) may never legally share in such gambling profits; from this we are asked to conclude that the above laws and decisions were binding upon the trial court and, upon appeal, binding upon this court.

█ The difficulty, however, with this argument is that the question of the contract's legality in Nevada was decided on the first appeal and is now the law of the case.[2] Thus, the opinion on that appeal (pertaining to the same facts here) reads in pertinent part: "The contract in question, though made in California, required performance in Nevada through carrying on a business that was and is there licensed and 'a lawful enterprise in Nevada.' [Citation.] The validity of such a contract generally is governed by the law of the place of performance. [Citations.]" (194 Cal.App.2d 177, 178-179.) And in the final paragraph of the same opinion: "It [the contract in question] plainly provided for the doing of lawful acts in a lawful manner (conducting a Nevada gambling casino). . . ." (194 Cal.App.2d 177, 182.) █ The rule seems now to be fairly well settled that "Where the particular point was *essential to the decision,* and the appellate judgment could not have been rendered without its determination, a necessary conclusion in support of the judgment is that it was determined." (3 Witkin, Cal. Procedure § 216, p. 2429.) See also *Coats* v. *General Motors Corp.,* 11 Cal.2d 601, 607 [81 P.2d 906]. █ In the present case, therefore, an essential condition precedent to the previous determination of the contract's enforceability in California was its validity under the law of the place of performance, namely, Nevada; but for such determination it must be assumed that the judgment would not have been reversed. Or, as stated by plaintiff's counsel, "The Appellate Opinion could not have been written if the District Court of Appeal had not found the contract to be valid in the place of performance. . . ."

---

[2] Although apprised of the fact by plaintiff's trial brief that plaintiff was invoking this doctrine, defendant has practically ignored its applicability on this appeal.

Furthermore, it is of no consequence that the point in question was not raised by counsel on the prior appeal or expressly mentioned. (3 Witkin, Cal. Procedure § 216, p. 2429.) Cited by the textwriter in this regard is *Davis* v. *Edmonds*, 218 Cal. 355, 358 - 359 [23 P.2d 289]: "Obviously, the objections either not having been made on the former trial or not having been urged as a ground or grounds for upholding the judgment, the merits thereof were not expressly decided by the decision on the former appeal. Nevertheless that decision necessarily is, just as effectually [*sic*] as though expressly so stated, that, inasmuch as the objections were waived by not having been made or not having been urged, the items constitute the proper subject of a book account." By analogy, therefore, it becomes immaterial that the lower court upon the first trial did not choose to determine the precise legal issue. The controlling factor here is that the reviewing court did so choose—impliedly, at the very least, if not expressly—in order to reach the result which it did.

Aside from the bare assertion that the issue was never expressly decided by the first trial judge, the only other reference to the point under discussion (and it is found in defendant's closing brief) is the statement that the first appeal did not determine that *all* the provisions of the contract were enforceable in Nevada. A sufficient answer to this statement is the excerpt from the prior opinion, hereinbefore quoted, which sets forth the contract's several provisions, including that portion of the agreement which is claimed to be unenforceable in Nevada; the contention is clearly without merit.

It is not contended, of course, that the doctrine of the law of the case should be disregarded because of harsh or inequitable results. (*England* v. *Hospital of the Good Samaritan*, 14 Cal.2d 791 [97 P.2d 813].) In this connection, as indicated in the prior opinion, defendant has had since November of 1955 a sum in excess of $55,000 which assertedly belongs to the plaintiff here. For this and other reasons already stated, it would be inequitable and unsound *not* to apply the doctrine. In so concluding, we are in accord with the trial court which likewise concluded that, "It would be, and is, inequitable for defendant, on a reversal of this case, wherein it has been stipulated that the re-trial be had upon the record made in the original trial, to permit defendant

to change its entire theory of defense and on re-trial after the District Court of Appeal . . . had held that the contract is enforceable under the laws of the State of California to permit defendant completely to reverse its position and to urge on re-trial that the contract is illegal under the laws of the State of Nevada.''

Even if the doctrine, above discussed, were not here controlling, there are other considerations which compel an affirmance of the judgment appealed from. ▓ It is the law that where no strong objections of public policy are present, a party to an illegal contract may be permitted to enforce it. (Rest., Contracts, § 601; *Wilson* v. *Stearns,* 123 Cal.App.2d 472, 481 [267 P.2d 59].) ▓ The opinion on the prior appeal has already declared that the subject contract is ''not contrary to the public policy of Nevada.'' That leaves plaintiff's asserted unlicensed status as the sole taint upon the agreement in suit, an agreement which for all intents and purposes was fully executed when the present litigation was commenced. It would seem that plaintiff's asserted status is now being used as a ''shield for the avoidance of a just obligation'' (*Gatti* v. *Highland Park Builders, Inc.,* 27 Cal.2d 687, 690 [166 P.2d 265]), but this should not be countenanced. ▓ As stated in *Norwood* v. *Judd,* 93 Cal.App.2d 276, 286 [209 P.2d 24], ''It must be remembered that these licensing statutes are passed primarily for the protection and safety of the public. They are not passed for the benefit of a greedy partner who seeks to keep for himself all of the fruits of the partnership enterprise to the exclusion of another partner entitled to share therein. Where the illegal transaction has been terminated, public policy is not protected or served by denying one partner relief against the other.'' ▓ We see no reason for distinguishing the present case from *Norwood* which further points out that denial of relief to participants (not necessarily partners) to an illegal transaction is limited to those not *in pari delicto* (p. 283); and, of course, it has not been made to appear that the parties are *in pari delicto* which was for the trier of fact (*May* v. *Herron,* 127 Cal.App.2d 707, 711 [274 P.2d 484]) and defendant has in no wise challenged any findings other than those involving the general issue of the contract's legality in Nevada.

Still another reason supporting the decision below arises from a proper recognition of the exception to the rule bar-

ring recovery upon contracts of the character claimed for that in suit. "Where the illegality is due to facts of which one party is justifiably ignorant and the other party is not, the illegality does not bar recovery by the innocent party . . . while he remains justifiably ignorant of the facts establishing illegality." (*Holland* v. *Morgan & Peacock Properties Co.*, 168 Cal.App.2d 206, 210 [335 P.2d 769].) There was evidence at bar that plaintiff's counsel was assured by defendant's counsel that the transaction embraced by the subject contract was legal under Nevada law and that plaintiff's counsel believed and relied upon the representations of defendant's counsel. The trial court so found and defendant's briefs do not challenge the sufficiency of this finding.[3]

 While it is true that misrepresentations as to matters of law are not ordinarily actionable, there is authority for plaintiff's claim that a misrepresentation to the law of another jurisdiction is not a mere matter of opinion but is regarded as a misrepresentation of fact. (*Travelers Ins. Co.* v. *Eviston*, 110 Ind. App. 143 [37 N.E.2d 310].) Furthermore, the doctrine of estoppel *in pais* would apply: "The doctrine of estoppel *in pais* proceeds upon the theory that the party has, by his declarations or conduct, misled another to his prejudice, so that it would be a fraud upon the latter to allow the true state of facts to be proved. The representation must be one intended by the party making it to be acted upon by the other, or made under such circumstances that the other had the right to believe that it was so intended." (*American National Bank of San Francisco* v. *A. G. Sommerville, Inc.*, 191 Cal. 364, 372-373 [216 P. 376].)

No other points require consideration.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied July 24, 1963, and appellant's petition for a hearing by the Supreme Court was denied August 28, 1963.

---

[3] At oral argument (and rather belatedly) the sufficiency of this finding was extensively challenged; we are satisfied, however, that the problem is one of conflicting inferences—the choice of which is for the trier of fact.