Bigelow, P.J., Dissenting:
I respectfully dissent. The majority's decision in this case will empower Leider to bring endless contempt proceedings against the Los Angeles Zoo, all based on injunctions that are contrary to California law. The trial court's findings of fact indicate that, whether in violation of Penal Code provisions or not, the living conditions of the elephants at the Zoo leave much to be desired, particularly when compared with what experts know about wild elephant habits, health, and social behaviors. Still, in my view this case ultimately turns not on any unique qualities or needs of elephants, but instead is necessarily determined based on the general principles that apply to taxpayer suits.
Unlike the majority, I would conclude Civil Code section 3369 (section 3369), which prohibits the issuance of an injunction to enforce a penal law, and which has been interpreted to apply to taxpayer suits, barred the relief Leider sought based on alleged violations of the Penal Code. I disagree with the majority that law of the case bars our consideration of the section 3369 issue raised in the City's appeal. Moreover, even if law of the case would otherwise prevent our consideration of the City's arguments, I find it inappropriate to apply the doctrine here because doing so will result in substantial injustice: the approval of injunctions unauthorized by law that will almost certainly spawn litigation for some time to come. The City believes the injunctions are unlawful; Leider believes the injunctions did not go far enough to protect the elephants. It seems inevitable that disputes over the City's compliance with the injunctions will ensue. While this might not be of concern as to valid injunctions, if, as the City contends, section 3369 and legal precedent prohibited the injunctions issued here, it would be unjust to affirm them and pave the way for contempt litigation in the future.
I. The Demurrer to the Amended Complaint Should Have Been Sustained
An order overruling a demurrer may be reviewed on an appeal from the final judgment.
*290 (San Diego Gas & Electric Co. v. Superior Court (1996) 13 Cal.4th 893, 912-913, 55 Cal.Rptr.2d 724, 920 P.2d 669.) When determining whether the demurrer was properly overruled, we must accept as true all facts properly pleaded in the complaint. (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 38, 77 Cal.Rptr.2d 709, 960 P.2d 513.) The *1108 standard of review is de novo.[1] (Bushell v. JPMorgan Chase Bank, N.A. (2013) 220 Cal.App.4th 915, 918, 163 Cal.Rptr.3d 539.)
A. This Court Should Not Invoke Law of the Case to Prevent Consideration of the City's Arguments
" 'The doctrine of "law of the case" deals with the effect of the first appellate decision on the subsequent retrial or appeal : The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' [Citation.]" (Morohoshi v. Pacific Home (2004) 34 Cal.4th 482, 491, 20 Cal.Rptr.3d 890, 100 P.3d 433 (Morohoshi ).) The doctrine applies even if the subsequent reviewing court concludes the first opinion was erroneous. (Ibid.; Lindsey v. Meyer (1981) 125 Cal.App.3d 536, 541, 178 Cal.Rptr. 1.) For the doctrine to apply, " '[i]t is fundamental that the point relied upon as law of the case must have been necessarily involved in the case.' [Citation.]" (Gyerman v. United States Lines Co. (1972) 7 Cal.3d 488, 498, 102 Cal.Rptr. 795, 498 P.2d 1043.) Law of the case does not apply to points of law "which might have been but were not presented and determined in the prior appeal," but it is "applicable to questions not expressly decided but implicitly decided because they were essential to the decision on the prior appeal." (Estate of Horman (1971) 5 Cal.3d 62, 73, 95 Cal.Rptr. 433, 485 P.2d 785.)
It is undisputed that the applicability of section 3369 as a bar to Leider's claims was neither raised by the parties in the prior appeal, nor was it expressly determined by this court. However, whether the issue was essential to the decision is a closer question. "Where the particular point was essential to the decision, and the appellate judgment could not have issued without its determination, a necessary conclusion is that the point was impliedly decided, even though the point was not raised by counsel or expressly mentioned." (Eldridge v. Burns (1982) 136 Cal.App.3d 907, 921, 186 Cal.Rptr. 784.)
In the first appeal, the plaintiffs argued the trial court erred in concluding their claims were not justiciable. In resolving this question, we concluded the plaintiffs had raised triable issues of fact as to whether the City was engaging in illegal expenditures by virtue of acts or omissions alleged to be in violation of Penal Code section 596.5. We concluded Penal Code section 596.5 provided a legal standard by which the alleged governmental conduct could be tested, thus the illegal expenditure claims were justiciable. Other issues regarding the legal *1109 unavailability of injunctive relief under section 526a when based on a penal law were neither raised nor determined in the first appeal. Whether section 3369 barred injunctive relief for the alleged illegal expenditure claims was not an explicit or implicit ground of the decision. ( *291 Morohoshi, supra, 34 Cal.4th at p. 492, 20 Cal.Rptr.3d 890, 100 P.3d 433.) Our first decision did not state a rule of law necessary to the decision of the case that we may apply in this subsequent appeal to resolve the section 3369 issue. (Greene v. Bank of America (2015) 236 Cal.App.4th 922, 932, 186 Cal.Rptr.3d 887; Sefton v. Sefton (2015) 236 Cal.App.4th 159, 172, fn. 6, 187 Cal.Rptr.3d 421 (Sefton ).)
It also cannot "fairly be said that determination of the issue was essential to the decision." (Estate of Horman, supra, 5 Cal.3d at p. 74, 95 Cal.Rptr. 433, 485 P.2d 785; Gyerman v. United States Lines Co., supra, 7 Cal.3d at p. 498, 102 Cal.Rptr. 795, 498 P.2d 1043.) Courts have concluded the determination of an issue was essential to an appellate decision when the first opinion could not have been written had the court not rejected the arguments advanced in subsequent proceedings. Thus, in Nevcal Enterprises, Inc. v. Cal-Neva Lodge, Inc. (1963) 217 Cal.App.2d 799, 32 Cal.Rptr. 106, the first appellate court concluded a contract concerning property in Nevada was enforceable in California. Law of the case applied in a second proceeding to prevent consideration of the argument that the same contract was illegal under Nevada law. Although the argument was not explicitly rejected in the first opinion, the second court concluded the validity of the contract under Nevada law was an "essential condition precedent to the previous determination of the contract's enforceability in California[.]" (Id. at p. 804, 32 Cal.Rptr. 106.) Similarly, in Puritan Leasing Co. v. Superior Court (1977) 76 Cal.App.3d 140, 149, 142 Cal.Rptr. 676, a decision that a particular lease was valid and enforceable implicitly rejected the argument that the lease was unenforceable for mistake or fraud.
In Yu v. Signet Bank/Virginia (2002) 103 Cal.App.4th 298, 126 Cal.Rptr.2d 516 (Yu ), in a first appeal, the court reversed a summary judgment after concluding there were triable issues of fact as to abuse of process and unlawful business practice claims arising out of alleged distant forum abuse. Law of the case prevented the defendants from subsequently arguing a California Supreme Court case relied upon in the first appeal was wrongly decided. The doctrine also prevented the defendants from asserting the plaintiffs failed to state a claim because the defendants' conduct was protected by the litigation privilege and the First Amendment. The court reasoned the issue of whether the plaintiffs had a cause of action for abuse of process under existing precedent remained the same and the defendants had merely "refined their arguments as to that issue." (Id. at p. 311, 126 Cal.Rptr.2d 516.)
While this case shares some similarities with Yu, I, unlike the majority, also find applicable Estate of Horman, a proceeding to determine heirship in *1110 which the government contended certain interests in the decedent's estate should escheat to the state. (Estate of Horman, supra, at p. 67, 95 Cal.Rptr. 433, 485 P.2d 785.) In a first appeal, the court considered a judgment finding the survivors had not sufficiently established their relationship to the decedent. In subsequent trial court proceedings, the state argued for the first time that the survivor claimants had not appeared and made a demand within a five-year period prescribed by the Probate Code. Although this argument, if successful, would have eliminated the claimants' petition in its entirety in the first appeal, the California Supreme Court concluded law of the case did not apply to bar consideration of the five-year argument in proceedings after the first appeal. (Id. at pp. 73-74, 95 Cal.Rptr. 433, 485 P.2d 785.) *292 The majority distinguishes Estate of Horman on the ground that the issue raised in the second appeal was a procedural bar, while the first appeal concerned only the merits. Yet, whether construed as a procedural issue or a substantive one, the "five-year period" problem was a threshold issue that was not raised until after the case was returned to the trial court following the first appeal. The Estate of Horman court concluded the first decision was not law of the case on the five-year argument because it was not raised by either party, was not expressly determined by the court, and was not essential to the first decision. (Id. at p. 74, 95 Cal.Rptr. 433, 485 P.2d 785.)
Applying the reasoning of these cases, I would conclude law of the case does not prevent our consideration of the section 3369 issue in this second appeal. Our first opinion considered only a narrow issue regarding the justiciability of the plaintiffs' claims, and concluded there were triable issues of material fact related to alleged illegal expenditures in connection with Penal Code section 596.5 alone. Whether section 3369 barred any injunctive relief for the alleged illegal expenditure claims was not a ground of the decision. (Morohoshi, supra, 34 Cal.4th at p. 492, 20 Cal.Rptr.3d 890, 100 P.3d 433.)
Moreover, departure from the rule of law of the case may be appropriate to prevent an "unjust decision." (People v. Shuey (1975) 13 Cal.3d 835, 846, 120 Cal.Rptr. 83, 533 P.2d 211, abrogated on another ground as stated in People v. Bennett (1998) 17 Cal.4th 373, 391, fn. 4, 70 Cal.Rptr.2d 850, 949 P.2d 947.) This has been interpreted, narrowly, to mean when "there has been a manifest misapplication of existing principles resulting in substantial injustice or where the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations." (Morohoshi, supra, 34 Cal.4th at pp. 491-492, 20 Cal.Rptr.3d 890, 100 P.3d 433.) Even if law of the case would otherwise apply to prevent us from considering the section 3369 argument, I would find the "unjust decision" exception appropriate here. As discussed in greater detail below, in my view, section 3369 and the decision in Nathan H. Schur Inc. v. City of Santa Monica (1956) 47 Cal.2d 11, 300 P.2d 831 (Schur ), represent longstanding principles that foreclose the injunctive relief Leider sought for alleged violations of the Penal Code. (Sefton, supra, 236 Cal.App.4th at p. 172, fn. 6, 187 Cal.Rptr.3d 421.)
*1111 The majority asserts the only injustice to result from application of law of the case is that the City will be required to rototill the soil in the elephant exhibit and provide the elephants with a certain amount of exercise. I would agree with the majority's decision were this, in fact, the case. I wholly favor ensuring the elephants are properly housed and exercised. However, I discern another outcome that would result in substantial injustice. If we refuse to consider the applicability of section 3369, we will affirm ongoing injunctive relief when no such relief is in fact available. (See Moore v. Kaufman (2010) 189 Cal.App.4th 604, 617, 117 Cal.Rptr.3d 196 [refusing to apply law of the case where party sought to collect a large amount based on patently void judgment and debtor faced incarceration for resisting collection efforts].) This is no minor concern. If injunctive relief was not available as a matter of law to address the concerns raised by the plaintiff, I view it to be a substantial injustice that the City should be required, for an indefinite period of time, to face potential contempt actions for any perceived or alleged failure to comply with the injunctions. In my view, this would be a substantial injustice, warranting *293 a departure from the rule of law of the case, even if it would otherwise apply here.
Further, in light of the procedural posture of this case, the concerns motivating the doctrine of law of the case-judicial economy and the desire to " 'avoid the further reversal and proceedings on remand that would result if the initial ruling were not adhered to in a later appellate proceeding' " (Nally v. Grace Community Church (1988) 47 Cal.3d 278, 302, 253 Cal.Rptr. 97, 763 P.2d 948)-are not present here. Considering the City's arguments raised in this appeal has the potential to simply terminate the case, and would not lead to a remand for further proceedings. I therefore would consider whether section 3369 prohibited the issuance of an injunction as relief on Leider's section 526a illegal expenditure claims based on alleged violations of the Penal Code.
B. Civil Code Section 3369 Barred Leider's Section 526a Claims Seeking Enforcement of Penal Laws
i. Civil Code Section 3369
Civil Code section 3369 provides: "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or as otherwise provided by law." The statute was enacted in 1872 as merely "the expression of the fundamental rule that courts of equity are not concerned with criminal matters and they cannot be resorted to for the prevention of criminal acts, except where property rights are involved." (Perrin v. Mountain View Mausoleum Ass'n (1929) 206 Cal. 669, 671, 275 P. 787 (Perrin ), citing Pomeroy's Equity Jurisprudence *1112 2d Ed.) pp. 4291-4292.) Thus, in cases in which the State seeks an injunction to prevent or stop criminal behavior, courts have generally denied relief under section 3369, unless there is evidence that the behavior, in addition to violating a penal law, also constitutes a public nuisance. (People ex rel. Gallo v. Acuna (1997) 14 Cal.4th 1090, 60 Cal.Rptr.2d 277, 929 P.2d 596 (Acuna )[acts of conduct which qualify as public nuisances are enjoinable as civil wrongs or prosecutable as criminal misdemeanors]; People v. Lim (1941) 18 Cal.2d 872, 880-882, 118 P.2d 472 (Lim ) [urging caution on criminal injunctions and keeping nuisance exception narrow, but concluding complaint stated cause of action where People alleged gambling house drew crowds of disorderly people who disturbed the peace and obstructed traffic]; Monterey Club v. Superior Court (1941) 48 Cal.App.2d 131, 144-150, 119 P.2d 349 [rejecting injunction to abate gambling operation alleged to be in violation of ordinance; no evidence of a public nuisance]; People v. Steele (1935) 4 Cal.App.2d 206, 211, 40 P.2d 959 [refusing injunction to prevent chiropractors from engaging in certain types of treatment; rejecting argument that the treatment methods constituted nuisance in the absence of a statute prohibiting them]; People v. Seccombe (1930) 103 Cal.App. 306, 309-313, 284 P. 725 [no injunction to restrain defendant from pursuing the "occupation of usurer"]; Weis v. Superior Court of San Diego County (1916) 30 Cal.App. 730, 731-732, 159 P. 464 [injunction was permissible to abate public nuisance of exhibition of naked women].)
Similarly, private citizens may not secure an injunction to enforce a penal law, unless an exception under section 3369 applies. (Major v. Silna (2005) 134 Cal.App.4th 1485, 1498-1499, 36 Cal.Rptr.3d 875 [in anti-SLAPP motion party failed to demonstrate probability of prevailing where complaint attempted to enjoin another individual's alleged violation of a municipal campaign finance ordinance];
*294 Perrin, supra, 206 Cal. at pp. 670, 674, 275 P. 787 [injunction denied to plaintiff seeking to enjoin defendants from constructing or operating mausoleum; despite being convicted of violating ordinances, defendants continued operations; complaint did not state facts constituting nuisance per se or that plaintiff suffered some exceptional damage]; Smith v. Collison (1931) 119 Cal.App. 180, 183-184, 6 P.2d 277 [injunction allowed to restrain defendants from opening a store in violation of a zoning ordinance on ground the erection of the store would create a nuisance and plaintiffs would suffer exceptional damage]; Stegner v. Bahr & Ledoyen, Inc. (1954) 126 Cal.App.2d 220, 231, 272 P.2d 106 (Stegner ) [no injunction where plaintiffs failed to prove the operation of rock quarry constituted a nuisance or would cause them legal injury; plaintiffs were seeking solely to enforce a penal law].)
A limited number of early cases took a broad view of the availability of an injunction when allegedly criminal conduct was involved. These cases either expansively interpreted the definition of nuisance, or suggested acts could be *1113 enjoined if, in addition to being crimes, they also adversely affected the plaintiff's property rights. (See e.g., In Herald v. Glendale Lodge No. 1289 (1920) 46 Cal.App. 325, 327, 333, 189 P. 329 [plaintiff allowed injunction to restrain lodge from serving alcohol to members in violation of city ordinance on theory that fine or attorney fees might cause club members, including plaintiff, pecuniary loss]; In re Wood (1924) 194 Cal. 49, 52-57, 227 P. 908(Wood ) [state allowed injunction ordering Industrial Workers of the World to cease attempts to prevent conspiracy to damage property and enjoining acts of criminal syndicalism].)
But in Lim, supra, the California Supreme Court took a more constrained approach and established the standard and reasoning adopted in most subsequent cases regarding the limited availability of injunctions to prevent crimes. (Acuna, supra, 14 Cal.4th at pp. 1106-1107, 60 Cal.Rptr.2d 277, 929 P.2d 596 [describing Lim as articulating an important limitation on the scope of the government's power to exploit the public nuisance injunction].) In Lim, the state sought an injunction to restrain the defendants from operating a gambling establishment. On appeal, the People argued gaming houses were inherent public nuisances and they could therefore be enjoined, despite the section 3369 prohibition. In analyzing this claim, the California Supreme Court acknowledged courts had issued injunctions against criminal conduct if that conduct constituted a nuisance. (Lim, supra, 18 Cal.2d at pp. 877-878, 118 P.2d 472.) But the court rejected any broadening of the exception by judicial expansion of the public nuisance doctrine beyond the statutory definition set forth in former Civil Code section 3479.[2] (Id. at p. 878, 118 P.2d 472.)
The court offered a narrow interpretation of its earlier holding in Wood : "The case of [Wood ], which has been severely criticized ... held only that the injunction granted was not void even though conceivably erroneous. This was so because the conspiracy there involved could be considered a public nuisance as a threatened impairment of the free use of property of the citizens of the state." ( *295 Lim, at pp. 878-879, 118 P.2d 472.) The court explained "compelling reasons of policy require that the responsibility for establishing those standards of public morality, the violations of which are to constitute public nuisances within equity's jurisdiction, should be left with the legislature." (Id. at pp. 879-880, 118 P.2d 472.) The court further reasoned:
"Conduct against which injunctions are sought in behalf of the public is frequently criminal in nature. While this alone will not prevent the intervention of equity where a clear case justifying equitable relief is present [citations], it is *1114 apparent that the equitable remedy has the collateral effect of depriving a defendant of the jury trial to which he would be entitled in a criminal prosecution for violating exactly the same standards of public policy. [Citations.] The defendant also loses the protection of the higher burden of proof required in criminal prosecutions and, after imprisonment and fine for violation of the equity injunction, may be subjected under the criminal law to similar punishment for the same acts. For these reasons equity is loath to interfere where the standards of public policy can be enforced by resort to the criminal law, and in the absence of a legislative declaration to that effect, the courts should not broaden the field in which injunctions against criminal activity will be granted. Thus, for the reasons set forth, the basis for an action such as this must be found in our statutes rather than by reference to the common law definitions of public nuisance." (Id. at pp. 880-881, 118 P.2d 472.)
Lim firmly established the general rule that in the absence of other specific statutory authorization, a court may not grant the state an injunction to enforce a penal law, unless the conduct to be enjoined is a nuisance. Subsequent courts applied the same rule in denying injunctions to private citizens when the purpose of the injunction was simply to enforce a penal law, and the enjoined conduct was not also a nuisance, or unfair competition after section 3369 was amended to include that exception. (See Acuna, supra, 14 Cal.4th at pp. 1106-1107, 60 Cal.Rptr.2d 277, 929 P.2d 596; Stegner, supra, 126 Cal.App.2d at pp. 231-232, 272 P.2d 106; International Etc. Workers v. Landowitz (1942) 20 Cal.2d 418, 422-423, 126 P.2d 609 (Landowitz ); People v. Brophy (1942) 49 Cal.App.2d 15, 31-32, 120 P.2d 946.)
ii. Schur
The question in this case is whether the section 526a claims based on the Zoo's alleged violations of Penal Code sections 596.5, 597, 597t, and 597.1, run afoul of section 3369 's prohibition against injunctions to enforce a penal law. In Schur, the California Supreme Court concluded section 3369 barred a court from issuing an injunction under section 526a to prevent expenditures alleged to be in violation of the Penal Code.
Schur concerned antigambling laws in the Penal Code and a Santa Monica ordinance governing the issuance of licenses for gambling establishments. As relevant here, the case involved a suit by the Nathan Schur corporation (Schur) against the city of Santa Monica and its police chief. Schur alleged the city's ordinance allowing issuance of licenses for certain games was illegal under Penal Code section 337. (Schur, supra, 47 Cal.2d at pp. 12-13, 300 P.2d 831.) Under Penal Code section 337: "Every state, county, city, city and county, town, or judicial district officer, or other person who shall ... issue, deliver, or cause to be given or delivered to any person or persons, any license, *1115 permit, or other privilege, giving, or pretending to give, any authority or right to any person or persons to carry on ... any game or *296 games which are forbidden or prohibited by Section 330 of said code; and any of such officer or officers who shall vote for the passage of any ordinance or by-law, giving ... any person or persons any authority or privilege to open ... or cause to be opened ... any game or games prohibited by said Section 330 of the Penal Code, is guilty of a felony."
Schur also alleged the city and police chief had issued illegal licenses to several plaintiffs, ("Troeger licensees"), for games which violated the Penal Code. Schur's complaint alleged "that because of the invalidity of the city laws and the licensing thereunder the city is illegally spending money in such licensing and in policing the games." (Schur, supra, 47 Cal.2d at p. 13, 300 P.2d 831.) Before trial, the Troeger licensees attempted to renew their gaming licenses. The city council held a noticed public hearing on the renewal applications. Schur's principal testified before the city council in opposition to the renewal application. Following the hearing, the city council concluded the Troeger licensees' games did not violate the Penal Code antigambling laws and they were entitled to licenses. (Id. at pp. 13-14, 300 P.2d 831.) Despite the city council determination, the police chief continued to refuse to issue the licenses. (Ibid.) The Troeger licensees filed a supplemental complaint challenging the city police chief's refusal to renew their gaming licenses. After a trial on the Schur and Troeger licensees complaints, the trial court found the city was illegally licensing the challenged games. The court enjoined the city from expending public funds to license games operated in violation of the Penal Code. The Troeger licensees appealed. (Id. at p. 14, 300 P.2d 831.)
The California Supreme Court framed the issue presented in Schur's complaint as follows: "Basically the action was to enjoin the city officials from possibly committing a crime by issuing licenses for gambling games contrary to state law, although it was also asked that they be restrained from expending the city funds involved in issuing these particular licenses, and that is as far as the judgment went in regard to preventative relief, it did declare the games were contrary to the state laws." (Schur, at p. 17, 300 P.2d 831.) The court then held the judgment could not stand, for two reasons. First, the court held city officials had the authority to determine whether the challenged games were legal, and the only appropriate avenue to challenge that decision was a review without independent evidence. (Ibid.) Second, the court stated "that unless the conduct complained of constitutes a nuisance as declared by the Legislature, equity will not enjoin it even if it constitutes a crime, as the appropriate tribunal for the enforcement of the criminal law is the court in an appropriate criminal proceeding." (Ibid.)
The court acknowledged that "a taxpayer may obtain preventive relief against the illegal expenditure of funds by a municipal corporation. ( *1116 Code Civ. Proc., § 526a; Simpson v. City of Los Angeles, 40 Cal.2d 271, 253 P.2d 464.)" (Schur, at p. 17, 300 P.2d 831.) Yet, the court again employed two lines of reasoning to explain why section 526a did not permit the relief issued by the trial court. The court first stated that despite section 526a, when a municipal corporation has, pursuant to valid authority, made a quasi-judicial decision regarding the issuance of a license, the only available relief is a review of that decision by a writ of mandamus or certiorari. A municipal corporation is not "required to justify its actions in a trial de novo in the court whether the one attacking its determination is a taxpayer or one of the applicants for a license." (Id. at p. 17, 300 P.2d 831.) The court noted there had been a public hearing on whether the Troeger licenses violated the Penal Code; notice *297 was provided to all concerned, including taxpayers; and Schur participated in the hearing.[3]
Second, and most relevant here, the court again described the Schur action as "basically one to enjoin the alleged commission of a crime." (Schur, at p. 18, 300 P.2d 831.) The court adopted and quoted the Lim court's analysis regarding California courts' refusal to grant injunctions on behalf of the state by a judicial extension of the term public nuisance; the collateral effects of granting an injunction against criminal conduct; and the direction that courts should not broaden the field in which injunctions against criminal activity will be granted. (Id. at pp. 18-19, 300 P.2d 831.) Therefore, the judgment enjoining the issuance of the licenses could not stand. (Id. at pp. 17-18, 300 P.2d 831.)
iii. Application to this case
According to the majority, Schur stands only for the proposition that when administrative review of a quasi-judicial governmental action is available, a taxpayer may not use section 526a to challenge that action in court. The majority also reads Schur as inapplicable to this case because the court viewed the action before it as one to enjoin a crime, instead of as a taxpayer action to stop the illegal use of funds.
I disagree with this narrow reading of Schur and would find it governs the result in this case. Like the case before us, Schur concerned a taxpayer allegation of illegal expenditure of government funds. Schur claimed the city and police chief were illegally expending government funds by issuing gambling licenses for games that violated the Penal Code; the issuance of *1117 such licenses was itself alleged to be an illegal act under Penal Code section 337. In this case, Leider alleged the City was illegally expending government funds by abusing elephants in violation of the Penal Code. Our high court in Schur acknowledged section 526a allows taxpayers to challenge a city's illegal expenditure of funds, but it did not accept that such authority extended to enjoining a crime. Despite section 526a, the court described the action was "basically one to enjoin the alleged commission of a crime." Leider's amended complaint, with respect to allegations based on the Penal Code, is also "basically one to enjoin the alleged commission of a crime" or crimes. Schur further applied the language of Lim to a case like this one in which a citizen, rather than the state, sought the challenged injunctive and declaratory relief, against a governmental entity. Under Schur, section 526a does not create an exception to section 3369.
I note that at least three other courts have recognized legal principles or statutes may prevent relief under section 526a where it might otherwise seem to be available. In Daar v. Alvord (1980) 101 Cal.App.3d 480, 161 Cal.Rptr. 658 (Daar ), the court held a taxpayer could not prosecute a section 526a action seeking injunctive relief to prevent county and city officials from spending allegedly illegally imposed and collected taxes. Provisions of the California Constitution and Revenue and Taxation Code prohibit courts from preventing or enjoining the collection of any tax. (Id. at p. 484, 161 Cal.Rptr. 658.) The court considered whether there was a conflict *298 between section 526a and the relevant constitutional and Tax and Revenue Code provisions. It concluded: "We have no difficulty in harmonizing these constitutional and statutory provisions. We deem that the illegal governmental activity which is subject to taxpayer challenge in section 526a does not include activity characterized as illegal solely by reason of purportedly illegal tax collection. It can be argued-but not reasonably so we think-that any expenditure of illegally collected taxes is per se an illegal governmental activity. We reject any such broad characterization as contrary to accepted principles of reasonable construction of constitutional and statutory provisions." (Id. at pp. 485-486, 161 Cal.Rptr. 658.)
Similarly, in Chiatello v. City and County of San Francisco (2010) 189 Cal.App.4th 472, 117 Cal.Rptr.3d 169 (Chiatello ), the court found the plaintiff lacked standing to prosecute an action under section 526a seeking to enjoin the collection of a challenged municipal payroll tax. The reasoning in Daar was not controlling because the case concerned a municipal, rather than state, tax. However, the Chiatello court explained the principle that courts should not enjoin the collection of a tax had received judicial recognition for nearly a century before it appeared in the California Constitution in 1910. (Chiatello, at p. 495, 117 Cal.Rptr.3d 169.) The court further noted there were no reported decisions in which tax collection was enjoined, confirming, at least circumstantially, that the power to issue such an injunction does not generally exist. (Id. at p. 496, 117 Cal.Rptr.3d 169.) Thus, although the court recognized there was "considerable *1118 force" in the argument that a " 'claim for a refund could never redress the harm that the plaintiff's complaint and Section 526a seek to prevent-the wasteful expenditure of public monies in implementing an invalid ordinance,' " that argument had to yield to the fact that the remedy sought-enjoining tax collection-"is a remedy California's common law had virtually forbidden prior to enactment of section 526a." (Id. at pp. 497-498, 117 Cal.Rptr.3d 169.) The court rejected the plaintiff's contention that section 526a lacked an exception for tax-related cases, reasoning "the statute would have to be construed to include such an exception because the Legislature would be presumed to have been aware of the common law aversion to enjoining tax collection." (Id. at p. 498, 117 Cal.Rptr.3d 169.) The court could not grant injunctive relief to prevent tax collection, section 526a notwithstanding. (Ibid.)
Most recently, in Animal Legal Defense Fund v. California Exposition and State Fairs (2015) 239 Cal.App.4th 1286, 192 Cal.Rptr.3d 89 (California Exposition ), the appellate court concluded a taxpayer could not bring a section 526a claim based on a violation of Penal Code section 597 or 597t, two animal cruelty provisions, both of which were also raised in Leider's amended complaint. In California Exposition, the court discussed a prior case, Animal Legal Defense Fund v. Mendes (2008) 160 Cal.App.4th 136, 72 Cal.Rptr.3d 553 (Mendes ), in which the court held there is no implied private right of action for a Penal Code section 597t violation. The court held the plaintiffs could not "circumvent the prohibition recognized in Mendes by couching their claim as a section 526a taxpayer action." (California Exposition, supra, at p. 1295, 192 Cal.Rptr.3d 89.) California Exposition addresses arguments that were not made in this case. Yet, like Daar and Chiatello, the court found a limit on the reach of a section 526a action. The court explained: "ALDF seeks to enjoin defendants from illegally using public resources, as opposed to seeking to enforce the animal cruelty law. But section 526a does not create an absolute *299 right of action in taxpayers to assert any claim for governmental waste. To the contrary, courts have recognized numerous situations in which a section 526a claim will not lie. [Citations.] To this list, we add a claim for alleged governmental waste based on an alleged violation of Penal Code section 597 or 597t." (Id. at p. 1298, 192 Cal.Rptr.3d 89.)
Although Schur did not address the question of a potential conflict between section 526a and section 3369 as explicitly as the courts did in Daar and Chiatello regarding tax principles, or as the court did in California Exposition regarding section 526a and the holding in Mendes, I understand Schur as reaching a similar conclusion-specifically that section 526a does not override the longstanding principle that injunctions may not issue to enforce a penal law. I find no meaningful basis to distinguish Schur from this case, or *1119 to avoid the conclusion that section 3369 barred the injunctive and declaratory relief Leider sought on the basis of alleged violations of the Penal Code. Indeed, on appeal, Leider has offered only two arguments to contend Schur does not apply in this case. Neither is persuasive, as discussed below.
iv. The 1977 Amendment of Civil Code section 3369 Does Not Change the Analysis
Leider's primary response to the City's argument is that Schur is no longer good law because it was based on a prior version of section 3369. When Schur was decided in 1956, former Civil Code section 3369, subdivision (1) read: "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or unfair competition." (Stats. 1933, ch. 953, § 1, p. 2482, unchanged until 1963.) Subdivisions (2) through (5) concerned the injunctive relief available in actions for unfair competition. The statute's provisions regarding unfair competition were amended four more times. In 1977, the Legislature amended section 3369, removing the unfair competition provisions and leaving only the first subdivision which read and still reads: "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or as otherwise provided by law." (Civ.Code, § 3369.) The provisions regarding unfair competition were moved to the Business and Professions Code. (Legis. Counsel's Dig., Assem. Bill No. 1280 (1977-1978 Reg. Sess.).) Newly enacted Business and Professions Code section 17202 read: "Notwithstanding Section 3369 of the Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition."
Leider reasons the pre-1977 version of section 3369 created impermissible conflicts with statutes such as section 526a, requiring courts to "ultimately emasculate one statute to honor another." Essentially, Leider asserts the 1977 amendment was a legislative response to Schur, or, even if not a direct response, the amendment changed the law underlying the Schur decision. I disagree with this reasoning as inconsistent with the language of section 3369, the legislative history, and the relevant caselaw.
In interpreting a statute, our "goal is to divine and give effect to the Legislature's intent."[4] ( *1120 Brodie v. Workers' Comp. Appeals Bd. (2007) 40 Cal.4th 1313, 1324, 57 Cal.Rptr.3d 644, 156 P.3d 1100 (Brodie ).) *300 "We consider first the words of a statute, as the most reliable indicator of legislative intent. [Citation.] ' " 'Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.' [Citation.] Interpretations that lead to absurd results or render words surplusage are to be avoided. [Citation.]" [Citation.]' [Citation.]" (Tuolumne Jobs & Small Business Alliance v. Superior Court (2014) 59 Cal.4th 1029, 1037, 175 Cal.Rptr.3d 601, 330 P.3d 912.) We presume as we must that the Legislature is aware of existing law, including caselaw interpreting a statute, and decisions relating directly to the legislation enacted. (Borikas v. Alameda Unified School Dist. (2013) 214 Cal.App.4th 135, 150, 154 Cal.Rptr.3d 186; People v. Childs (2013) 220 Cal.App.4th 1079, 1104, 164 Cal.Rptr.3d 287.)
Further, as the reviewing court, " '[w]e do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied.' [Citations.]" (Brodie, supra, 40 Cal.4th at p. 1325, 57 Cal.Rptr.3d 644, 156 P.3d 1100; Regency Outdoor Advertising, Inc. v. City of Los Angeles (2006) 39 Cal.4th 507, 526, 46 Cal.Rptr.3d 742, 139 P.3d 119.) Nothing in the language of section 3369 as amended in 1977 indicates a legislative intent to overrule the principle established by Schur. Indeed, when the former and amended versions of the statute are compared, nothing in the language explicitly or implicitly indicates any change of substantive law.
In fact, the language of some opinions before 1977 suggests courts already construed section 3369 as not prohibiting injunctive relief "as otherwise provided by law." In Landowitz, supra, 20 Cal.2d 418, 126 P.2d 609, our high court rejected a claim seeking to enjoin a violation of a city ordinance. The claim was based on an unfair competition ordinance that provided for the regulation of competitive practices among cleaners and dyers, and was "penal in nature." (Id. at pp. 420-421, 126 P.2d 609.) An enabling statute specifically authorized a person to seek injunctive relief for violations of the ordinance. However, the enabling statute allowing for injunctive relief was repealed. Because the statutory authorization for injunctive relief had been removed, and because the ordinance was penal, the court concluded the plaintiffs' action "to restrain ... violation [of the ordinance] requires specific authorization, in the absence of which it must be held that the complaint fails to state a cause of action." (Id. at p. 421, 126 P.2d 609.) The unfair competition exception in section 3369 did not cover the conduct alleged in the complaint. Thus, "[t]he statutory authority for such an action in equity, which was formerly provided by ... the statutes referred to, has now been withdrawn ... therefore, no cause of action is stated ... No other *1121 authorization for this action has been called to our attention." (Ibid.)
This reasoning suggests courts already understood section 3369 to allow injunctive relief to enforce a penal law when another statute specifically authorized such relief. In Landowitz, the problem was that the specific statutory authorization had been withdrawn. A similar idea was alluded to in People ex rel. Chiropractic League v. Steele (1935) 4 Cal.App.2d 206, 40 P.2d 959 (Steele ), in which the court refused to allow injunctive relief to prevent acts which violated a penal statute but were not also a public nuisance. In response to the People's petition for rehearing, which in part asserted the consequence of the decision would be "disastrous," the court noted: "It is sufficient to point out that if the legislature had deemed the remedy by injunction necessary to the enforcement of the acts governing the practice of healing *301 arts it would have been an easy matter to provide therefor by statute." (Id. at p. 213, 40 P.2d 959.) The apparent recognition of courts, prior to 1977, that the Legislature could create exceptions to section 3369 in other statutes counters Leider's argument that the amended version of section 3369 changed the substantive law.[5]
Landowitz and Steele were decided well before Schur. In my view, the most reasonable interpretation of Schur is not, as Leider argues, that the court had an impassable conflict and was forced to "emasculate" one statute over the other. Instead, the Schur court concluded section 526a did not provide a statutory exception to section 3369. As a result, in 1977, over 20 years after Schur was decided, there was no conflict between section 526a and section 3369. Under Schur, section 526a did not provide an exception to section 3369. Accordingly, the 1977 amendment to section 3369 replacing "unfair competition" with "as otherwise provided by law" would not include section 526a.
To the extent the language of section 3369 does not indisputably repudiate any intent to allow injunctive relief under section 526a for claims based on penal laws, we also consider the legislative history. (Brodie, supra, 40 Cal.4th at p. 1328, 57 Cal.Rptr.3d 644, 156 P.3d 1100.) If, as Leider argues, the Legislature intended to overrule cases, including Schur, in which courts had concluded injunctive relief under *1122 a particular statute was not available due to section 3369, one would expect this intent to be referenced in the legislative history. It is not. Instead, the bill effecting the amendment was repeatedly described as a "technical adjustment."
For example, in an Assembly Committee on Judiciary Bill Digest, A.B. 1280, the bill was described as follows: "The Civil Code contains a chapter ... which contains the general principles governing injunctive relief. As injunctive relief became more prevalent in unfair competition cases, a process began of adding provisions to that chapter which related only to unfair competition cases. As a result of this process there is now a body of statutory law dealing solely with the enforcement of unfair competition laws which is located in the wrong part of the codes. [¶] This bill transfers these provisions, without substantive change, from the Civil Code to a more appropriate location in the Business and Professions Code." (Assem. Com. On Judiciary, Digest of Assem. Bill No. 1280 (1977-1978 Reg. Sess.) May 19, 1977.) Similarly, a Senate Committee on Judiciary report on A.B. 1280 commented: "This bill merely makes a technical code adjustment in the location of various statutes relating to unfair competition." (Sen. Com. On Judiciary, com. On Assem. Bill No. 1280 (1977-1978 Reg. Sess.) as amended June 3, 1977.)
The legislative history confirms only a single legislative intent behind the 1977 amendment-a "code adjustment." The history is devoid of any intent to change any substantive law, either relating to the general rule under section 3369, or the unfair competition laws. In light of the caselaw, the language of the statute, and the legislative history, there is no basis to conclude that by amending section 3369 to *302 replace "unfair competition" with "as otherwise provided by law," the Legislature intended to effect a change in the law, or address a problem of conflicting statutes.
The two cases Leider cites to support his argument do not mandate a contrary conclusion. People v. E.W.A.P., Inc. (1980) 106 Cal.App.3d 315, 165 Cal.Rptr. 73, concerned the scope of unlawful business practices that could be considered unfair competition under Business and Professions Code section 17200. The People sought to enjoin the distribution of obscene matter as defined in the Penal Code. The court noted that while traditionally courts of equity declined to issue injunctions to enforce penal laws, "the fact that certain conduct is a crime will not prevent the issuance of an injunction if the conduct also falls within a specific statute authorizing an injunction." (Id. at p. 320, 165 Cal.Rptr. 73.) Business and Professions Code section 17202 provided such specific authorization. (Ibid.)
*1123 Similarly, in People v. K. Sakai Co. (1976) 56 Cal.App.3d 531, 128 Cal.Rptr. 536, the People sought an injunction under former section 3369 to enjoin violations of Penal Code sections prohibiting the sale of whale meat. Although the alleged conduct violated a penal law, the action was one seeking to enjoin unfair competition. (See id. at p. 533, 128 Cal.Rptr. 536; People v. McKale (1979) 25 Cal.3d 626, 633, 159 Cal.Rptr. 811, 602 P.2d 731.) Thus, neither E.W.A.P. nor Sakai supports Leider's argument. Both cases concerned unfair competition at times when first section 3369, then Business and Professions Code section 17202, specifically authorized the issuance of an injunction even if it would also enforce a penal law. Neither case affects the conclusion that under Schur, section 526a had been construed by our high court as not providing a similar specific statutory authorization that would take such claims outside of the general section 3369 prohibition against injunctions to enforce penal laws.
The language of the statute and the legislative history provide ample explanation for the 1977 amendment that is entirely unconnected to Schur. We have no basis to impute to the Legislature an intent to overrule Schur. (Brodie, supra, 40 Cal.4th at p. 1328, 57 Cal.Rptr.3d 644, 156 P.3d 1100.)
v. Schur Did Not Eviscerate Governmental Liability for "Illegal Expenditures" Under Section 526a
Leider's only other argument is that the Schur court's reasoning, or failing to read section 3369 as authorizing injunctions under 526a to enforce penal laws, would eliminate any claim under section 526a for illegal expenditures. I disagree. Schur and section 3369 only concern actions seeking to enforce penal laws. Many section 526a claims seeking relief for illegal expenditures concern alleged illegalities that are not penal but are still unlawful. Thus, in the seminal case of Blair v. Pitchess (1971) 5 Cal.3d 258, 96 Cal.Rptr. 42, 486 P.2d 1242, our high court affirmed a judgment issuing injunctive relief to prevent the enforcement of what the court concluded was an unconstitutional claim and delivery law. Within the context of illegal expenditures under section 526a, the court held an injunction under section 526a would properly issue to restrain the enforcement of a statute or other law that is unconstitutional. (Id. at pp. 268-269, 96 Cal.Rptr. 42, 486 P.2d 1242.) Even earlier, in Wirin v. Parker (1957) 48 Cal.2d 890, 313 P.2d 844, our high court concluded the plaintiff was entitled to seek injunctive relief to prevent the expenditure of public funds to conduct police surveillance by means of concealed microphones, on the theory that such surveillance violated the United States and *303 California Constitutions, and the expenditures were therefore illegal. (Id. at pp. 893-894, 313 P.2d 844; see also *1124 Ames v. City of Hermosa Beach (1971) 16 Cal.App.3d 146, 150-151, 93 Cal.Rptr. 786 rejecting argument that section 526a may not be used to enjoin the expenditure of public funds to enforce an unconstitutional penal statute.)
In other cases, plaintiffs have stated claims under section 526a for expenditures that were allegedly illegal because they violated a city charter or other statutory or municipal codes governing particular types of expenditures (Harman v. City and County of San Francisco (1972) 7 Cal.3d 150, 101 Cal.Rptr. 880, 496 P.2d 1248 [alleged violation of city charter provisions requiring city to obtain 90 percent market value for properties sold]; Terry v. Bender (1956) 143 Cal.App.2d 198, 204, 300 P.2d 119 charter provision prohibiting city officials from having an interest in certain contracts involving the city; payment of a bribe to mayor with respect to city contract violated charter and was illegal payment under section 526a; Crowe v. Boyle (1920) 184 Cal. 117, 193 P. 111 [if contract was illegal and void because it conflicted with violation of charter provisions, taxpayers had right to prevent such illegal expenditures]; Osburn v. Stone (1915) 170 Cal. 480, 150 P. 367 [expenditures allegedly made without following requirements such as resolution of intention and competitive bids].)
The illegal expenditures prong of section 526a has never been interpreted as applying only to claims based on alleged violations of penal laws. We need not read Schur as invalidating a portion of section 526a.[6] Further we are bound to follow California Supreme Court precedent in the absence of any indication that it is no longer good law. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.)
C. Conclusion
I, like the majority, remain concerned about the conditions of the elephants at the Los Angeles Zoo, given the record developed at trial regarding the history of mistreatment and the less than ideal conditions at present. But addressing these concerns must be done within the confines of California law. No matter the nature of the underlying evil sought to be remedied, Schur and section 3369 indicate section 526a suits may not be used to enjoin violations of penal *1125 laws. As either pled or proven, I see no other basis for the relief Leider has sought. I therefore would reverse the trial court judgment issuing injunctions premised on a violations of the Penal Code.
I therefore, respectfully, dissent.

By this time Culp had died and Leider was the sole plaintiff.

Penal Code section 596.5 renders it a misdemeanor "for any owner or manager of an elephant to engage in abusive behavior towards the elephant, which behavior shall include the discipline of the elephant by any of the following methods: (a) Deprivation of food, water, or rest. [¶] (b) Use of electricity. [¶] (c) Physical punishment resulting in damage, scarring, or breakage of skin. [¶] (d) Insertion of any instrument into any bodily orifice. [¶] (e) Use of [head restraint devices known as] martingales. [¶] (f) Use of block and tackle."

For ease of reference we will refer to our decision in the first appeal as Leider I.

Penal Code section 597, subdivision (b) provides in relevant part: "whoever, having the charge or custody of any animal, either as owner or otherwise, subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses any animal, or fails to provide the animal with proper food, drink, or shelter or protection from the weather, or who drives, rides, or otherwise uses the animal when unfit for labor, is, for each offense, guilty of a crime punishable pursuant to subdivision (d)."Penal Code section 597.1, subdivision (a)(1), provides, in part: "Every owner, driver, or keeper of any animal who permits the animal to be in any building, enclosure, lane, street, square, or lot of any city, county, city and county, or judicial district without proper care and attention is guilty of a misdemeanor. Any peace officer, humane society officer, or animal control officer shall take possession of the stray or abandoned animal and shall provide care and treatment for the animal until the animal is deemed to be in suitable condition to be returned to the owner. When the officer has reasonable grounds to believe that very prompt action is required to protect the health or safety of the animal or the health or safety of others, the officer shall immediately seize the animal and comply with subdivision (f)."

The regulations Leider referenced concern specifications for the "humane handling, care, treatment, and transportation" of certain warm-blooded animals. 9 Code of Federal Regulations section 3.128 states: "Enclosures shall be constructed and maintained so as to provide sufficient space to allow each animal to make normal postural and social adjustments with adequate freedom of movement. Inadequate space may be indicated by evidence of malnutrition, poor condition, debility, stress, or abnormal behavior patterns." The trial court concluded the evidence established the elephants have enough space and freedom to make normal adjustments of their posture and social movements.

Penal Code section 597t provides in part: "Every person who keeps an animal confined in an enclosed area shall provide it with an adequate exercise area. If the animal is restricted by a leash, rope, or chain, the leash, rope, or chain shall be affixed in such a manner that it will prevent the animal from becoming entangled or injured and permit the animal's access to adequate shelter, food, and water. Violation of this section constitutes a misdemeanor."