[No. F052009. Fifth Dist. Feb. 15, 2008.]

ANIMAL LEGAL DEFENSE FUND et al., Plaintiffs and Appellants, v. VICTOR L. MENDES et al., Defendants and Respondents.

**COUNSEL**

DLA Piper US, Kathryn E. Karcher, Julie L. Schwartz, Heather N. Stone and Bruce A. Wagman for Plaintiffs and Appellants.

Sagaser, Jones & Helsley, Howard A. Sagaser and David W. Burnett for Defendants and Respondents.

**OPINION**

**VARTABEDIAN, Acting P. J.**—This is an appeal from judgment entered after the trial court sustained a demurrer, without leave to amend, to appellants' complaint for declaratory and injunctive relief brought against respondent calf ranchers. Appellants assert causes of action for violation of Penal Code section 597t in confining animals without an "adequate exercise area," and for commission of unfair business practices under Business and Professions Code section 17200 et seq. causing the consumer appellants "loss of money or property." We find the trial court did not err; there is no private cause of action pursuant to Penal Code section 597t under the present circumstances, and none of the appellants have shown an ability to allege any facts of economic injury. Accordingly, we will affirm the judgment.

## Facts and Procedural History[1]

Appellant Animal Legal Defense Fund is a nonprofit corporation established to "protect the lives and interests of animals through the legal system," as described in the complaint. Appellants Kristin Burford and Kristina Filipovich are California residents and consumers of retail dairy products. Because the issues concerning the corporate and individual appellants require separate discussions, and for convenience and clarity, we will refer to the corporate appellant as ALDF and the individuals as the consumers.

Defendants and respondents Victor L. Mendes and Debbie L. Mendes (respondents) are engaged in business in Tulare County as Mendes Calf Ranch.[2] Respondents are in the business of raising calves placed with them by dairies. After about six months, the calves are returned to their owners.[3] The complaint alleges respondents have approximately 12,000 calves at any one time.

The factual core of the complaint is an allegation that calves are confined to isolation crates for up to 60 days at a time. Each crate is barely bigger than the calf and is not large enough to permit the calf to turn around or lie in a natural position for periods of rest. Only the bottoms of the crates are regularly washed, and fecal matter and other materials are washed from the top and sides of the crates only upon a change of occupant.

The first cause of action, asserted by ALDF only, alleges that respondents' confinement of calves constitutes a violation of Penal Code section 597t. That section, as relevant here, provides that it is a misdemeanor to confine an animal without an "adequate exercise area." As to this cause of action, the complaint seeks a declaration that respondents' actions violate Penal Code section 597t and an injunction prohibiting respondents from continuing to violate that section.

---

[1] On appeal from judgment entered after the court has sustained a demurrer, we accept as true all well-pleaded facts in the complaint and give a reasonable construction to the complaint as a whole. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

[2] Other defendants, governmental entities, were dismissed from the appeal.

[3] Cows must give birth in order to produce milk. To maintain productivity in a dairy setting, cows are bred to give birth every 12 to 15 months. Female calves, essentially a byproduct of this necessity, can be raised and added to the producing herd after they have calved. The complaint alleges respondents raise the calves for about six months before returning them to the owners.

The second cause of action, asserted by the consumers only, alleges respondents have violated the unfair business practices law, Business and Professions Code section 17200 et seq. This violation is alleged to arise because the consumers "reasonably presumed that [dairy products they purchased] were being produced in accordance with California law and that the individual dairies providing the milk were treating their calves in accordance with California law. Therefore, [the consumers] have suffered harm and lost money as a result of purchasing dairy products that were unlawfully, unfairly and illegally produced." The complaint further alleges that as a "direct and proximate result of [respondents'] wrongful conduct, [the consumers] have suffered and will continue to suffer substantial pecuniary losses and irreparable injury." The second cause of action seeks the same declaratory and injunctive relief sought in the first cause of action.[4]

Respondents demurred to the complaint on the basis that it failed to state a cause of action. After a hearing on the demurrer, the court adopted its tentative ruling as its final ruling and sustained the demurrer without leave to amend. Judgment was entered accordingly. Appellants filed a timely notice of appeal.

### Discussion

### A. ALDF's Cause of Action

■ There are at least three different ways alleged violations of criminal law can result in civil actions. First, and perhaps most commonly, violation of a criminal statute can be used to establish a breach of the standard of care or other element of an ordinary tort cause of action. (See 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 11, p. 55.) Second, and pertinent to ALDF's argument on appeal, a criminal statute can expressly or impliedly give rise to a private right of action for its violation. (*Ibid.*) Third, under some circumstances, a governmental or quasi-governmental agency can sue to enjoin further breaches of the statute on a public nuisance or related theory. (See *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1107–1108 [60 Cal.Rptr.2d 277, 929 P.2d 596].)

ALDF contends Penal Code section 597t impliedly establishes a private right of action in entities with a long-standing commitment to carrying out the laws protecting animals and a history of "direct work in the area of animal cruelty law enforcement and protection. Alongside prosecutors, groups like ALDF are the natural torchbearers for society and the animals in

---

[4] The third cause of action was against defendants who were dismissed from this appeal; as such that cause of action has no bearing on the appeal.

ensuring the protections under California's anti-cruelty laws, and ALDF and its members are significantly injured when those laws are violated." ALDF notes, as part of its discussion in support of this claim, that "more than thirty statutes in the California Penal Code [are] designed to grant protections to animals in this state from abuses and maltreatment," all "designed with the intent to benefit both animals and groups like ALDF who take on the task of shielding them from harm."

The issue in a case such as this is primarily one of legislative intent. If the Legislature intended a private right of action, that usually ends the inquiry. If the Legislature intended there be no private right of action, that usually ends the inquiry. If we determine the Legislature expressed no intent on the matter either way, directly or impliedly, there is no private right of action (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305 [250 Cal.Rptr. 116, 758 P.2d 58] (*Moradi-Shalal*)), with the possible exception that compelling reasons of public policy might require judicial recognition of such a right. (See *id.* at pp. 304–305; see also *Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300, 317 [127 Cal.Rptr.2d 482, 58 P.3d 339] [considerations for judicial recognition of private right of action for constitutional violations].)[5]

■ In the present case, we conclude the Legislature intended there not be a private right of action to enforce Penal Code section 597t: In light of the overall statutory scheme effectively "deputizing" humane societies to aid local authorities in the enforcement of anticruelty laws, we think it clear that the Legislature did not intend to create a private right of action in other private entities, no matter how well intentioned the goals of such entities. (See *Arriaga v. Loma Linda University* (1992) 10 Cal.App.4th 1556, 1563–1564 [13 Cal.Rptr.2d 619].)

■ Since 1905, California has authorized the formation of corporations for the prevention of cruelty to animals. (See Civ. Code, former § 607, repealed by Stats. 1947, ch. 1038, § 100001, p. 2439; see also Stats. 1947, ch. 1038, § 10404, p. 2423, enacting Corp. Code, § 10400.) Such a corporation (hereafter section § 10400 corporations) "may prefer a complaint against any

---

[5] ALDF appears to argue that the holding in *Moradi-Shalal* is limited to insurance cases only. The Supreme Court, however, subsequently applied *Moradi-Shalal* as a general statement of the rule concerning implied private rights of action. (See *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 565–566 [71 Cal.Rptr.2d 731, 950 P.2d 1086].) Other courts of appeal have also treated *Moradi-Shalal* as applicable to the issue of implied private rights of action generally. (See, e.g., *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 377–378 [17 Cal.Rptr.3d 39] [finding legislative intent to create private right of action after applying *Moradi-Shalal* analysis].) We conclude *Moradi-Shalal* establishes the analytical framework applicable to all claims of implied private right of action under statutes not expressly providing for private rights of action.

person, before any court or magistrate having jurisdiction, for the violation of any law relating to or affecting . . . animals, and may aid in the prosecution of any such offender before such court or magistrate." (Corp. Code, § 10404.)

Presumably because the law confers quasi-governmental powers on these corporations, the "articles of incorporation of such corporations filed with the Secretary of State shall be endorsed by the Department of Justice or by a judge of the superior court of the county in which the principal office of the corporation is located, as evidence of necessity." (Corp. Code, § 10401.) If the Department of Justice fails to act on an application for endorsement within 90 days, or refuses such endorsement, the organizers of the corporation may apply to a superior court judge, who shall act on the application "after giving due consideration to the necessity of such corporation and assuring himself that the incorporators are acting in good faith." (Corp. Code, § 10402.)

Only section 10400 corporations may apply for appointment of humane officers, whose duty "shall be the enforcement of the laws for the prevention of cruelty to animals." (Corp. Code, § 14502, subd. (a)(1)(A)(i).) Humane officers are required to have initial qualifications and subsequent periodic training. (*Id.*, subd. (i).) Powers to enforce anticruelty laws are conferred on humane officers by statute. (See *id.*, subd. (i)(1)(A)–(C), (2)(A)–(C); see also Pen. Code, §§ 597f, 599aa [seizure of certain animals by humane officers].)

Not only do the Corporations Code and the Penal Code provide for extensive regulation and empowerment of section 10400 corporations and humane officers, the Penal Code expressly provides a remedy for those not so regulated when they believe, inter alia, animal cruelty "is being, or is about to be" committed in "any particular building or place." (Pen. Code, § 599a.) "When complaint is made, on oath, to any magistrate authorized to issue warrants in criminal cases, that the complainant believes" animal cruelty is taking place or will take place at a specific site, "the magistrate must issue and deliver immediately a warrant directed to any sheriff, police or peace officer or officer of any [section 10400 corporation], authorizing him to enter and search that building or place, and to arrest any person there present violating, or attempting to violate" any anticruelty law. (*Ibid.*)

■ Accordingly, we conclude there is in place an explicit and comprehensive legislative scheme for enforcement of anticruelty laws, including an explicit avenue for enforcement upon the complaint of any person. This broad and

somewhat unusual scheme for enforcement in the criminal system of laws for the protection of animals, including direct participation of both concerned residents and registered humane officers, demonstrates a legislative intent that these laws not be enforceable through a private right of action in civil court. (See *Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 136 [62 Cal.Rptr.2d 620] (*Crusader Ins. Co.*).)

ALDF cites three cases for the open-ended proposition that "[t]hose who receive special value from policy-based statutes have standing to bring a civil action, even where those statutes do not contain a specific private right of action." The cited cases are *Wetherton v. Growers Farm Labor Assn.* (1969) 275 Cal.App.2d 168, 174 [79 Cal.Rptr. 543] (*Wetherton*); *Michael R. v. Jeffrey B.* (1984) 158 Cal.App.3d 1059, 1067 [205 Cal.Rptr. 312] (*Michael R.*), and *South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc.* (1999) 72 Cal.App.4th 1111, 1113 [85 Cal.Rptr.2d 647] (*South Bay*).

Both *Wetherton* and *Michael R.* were decided before *Moradi-Shalal, supra,* 46 Cal.3d 287, and both apply a too broad standard for implying a private right of action. *Michael R.* states the standard: "Violation of a statute embodying a public policy is generally actionable even though no specific civil remedy is provided in the statute itself. Any injured member of the public for whose benefit the statute was enacted may bring the action." (*Michael R., supra,* 158 Cal.App.3d at p. 1067.) (We also note that *Michael R.* was a negligence action and, despite the broad language just quoted, the court also stated: "Although a statute that provides solely for a criminal penalty does not *create* a civil liability, the significance of the statute in a civil suit for negligence involves its formulation of a standard of conduct that the court then adopts in the determination of such liability." (*Ibid.*) Thus, the cited case does not involve direct civil enforcement of a criminal statute.)

As the Court of Appeal pointed out in *Crusader Ins. Co., supra,* 54 Cal.App.4th at pages 131–132, the California Supreme Court has never adopted the broad standard asserted in *Wetherton* and *Michael R.* Instead, both in *Moradi-Shalal* and its predecessors, the Supreme Court looked to legislative intent and found, in the absence of an intent to provide a private right of action, that the courts were not to create such a right. (*Crusader Ins. Co., supra,* at p. 133.) We conclude the approach reflected in *Wetherton* and *Michael R.* has been superseded by the legislative intent approach reiterated in *Moradi-Shalal.* (See *Crusader Ins. Co., supra,* at pp. 132–133.)[6]

---

[6] To the extent *Jacobellis v. State Farm Fire & Cas. Co.* (9th Cir. 1997) 120 F.3d 171, 174, relied upon by ALDF, holds that California cases permit a private right of action whenever such a right is "needed to assure the effectiveness of the statute," we disagree for the reasons set forth in *Crusader Ins. Co., supra,* 54 Cal.App.4th at pages 132–133. In any event, the statutory scheme now before us does not require a private right of action in order to be

The third case cited by ALDF in support of its broad standard for permitting a private right of action to enforce a criminal statute is *South Bay, supra,* 72 Cal.App.4th at page 1113. That case does not mention *Moradi-Shalal* and does not purport to permit a civil action to enforce a criminal statute. *South Bay,* like *Michael R., supra,* 158 Cal.App.3d at page 1067, stands for the very different proposition that a plaintiff may rely on standards established in a criminal statute to establish a traditional tort action, in that case, fraud. (*South Bay, supra,* at pp. 1123–1124.) In the present case, ALDF does not state a tort cause of action for which it claims Penal Code section 597t establishes the duty of care imposed on the respondents; ALDF attempts instead to directly enforce the Penal Code section.

We conclude the trial court correctly sustained respondents' demurrer to the ALDF cause of action: There is no private right of action to directly enforce Penal Code section 597t.

### B. The Consumers' Cause of Action

The trial court concluded the consumers had not alleged an adequate injury to state a cause of action under the unfair business practices law, Business and Professions Code section 17200 et seq. The consumers contend they adequately alleged respondents' conduct caused injury personal to themselves and resulted in "lost money or property," the two requirements for standing to bring an action established in Business and Professions Code section 17204.[7] We agree with the trial court.

The consumers do not allege that respondents sold them milk, nor that respondents produced the milk sold to them by others. They do not allege that the milk sold to them, regardless of who sold it and who produced it, was physically inferior to other milk. They do not allege that respondents' treatment of the young calves has any negative effect on the milk produced by these calves months and years later, when they are in a dairy herd. And they do not allege that anyone made express representations about the milk, similar to express claims that dairy products are organic, produced by

---

effective. As discussed above, any concerned person may cause an investigation of animal cruelty by filing a complaint under oath directly with the court. (See Pen. Code, § 599a.) In *Farm Sanctuary, Inc. v. Department of Food & Agriculture* (1998) 63 Cal.App.4th 495 [74 Cal.Rptr.2d 75], which ALDF also cites in passing, the plaintiff challenged governmental regulations issued to permit ritualistic slaughter of poultry. Standing was explicitly established by Government Code section 11350, subdivision (a), and such standing was conceded by the defendant agency. (*Farm Sanctuary, Inc., supra,* at p. 501, fn. 4.)

[7] Business and Professions Code section 17204 authorizes various enumerated governmental entities to enforce the unfair business practices law and, in addition, confers standing to enforce the law upon "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition."

non-hormonallyenhanced cows, or produced by grass-grazed cows. (See, e.g., *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939 [119 Cal.Rptr.2d 296, 45 P.3d 243] [representations by manufacturer concerning its labor practices]; *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 672 [38 Cal.Rptr.3d 36] [false claim product " 'Made in U.S.A.' "]; cf. *People for Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory Bd.* (2005) 125 Cal.App.4th 871 [22 Cal.Rptr.3d 900] [alleging falsity of defendant's advertising that California dairy herds are composed of "Happy Cows"].) Instead, the consumers' alleged injury is that they bought milk they otherwise would not have bought if they had thought some of the producing herd may have been raised by respondents in cruel conditions.

■ In the usual case (for example, a personal injury claim arising from an automobile accident), the allegation of the necessary causal connection between the negligence of the defendant and the plaintiff's injuries is inferable " 'from the juxtaposition of the allegations of wrongful conduct and harm. [Citation.] However, where the pleaded facts of negligence and injury do not naturally give rise to an inference of causation the plaintiff must plead specific facts affording an inference the one caused the others.' " (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 900–901 [2 Cal.Rptr.2d 79, 820 P.2d 181].)

In the present case, the causal connection between wrongful conduct and injury is not apparent and is not alleged with any specificity. The complaint alleges that calves raised by Mendes are in herds producing milk the consumers purchased. Then it alleges: "At the time of purchasing and consuming these products, until they learned about Mendes' unlawful, unfair and/or illegal business practices, Plaintiffs reasonably presumed that the products were being produced in accordance with California law and that the individual dairies providing the milk were treating their calves in accordance with California law. Therefore, [plaintiffs] have suffered harm and lost money as a result of purchasing dairy products that were unlawfully, unfairly and illegally produced."

Economic injury cannot be inferred from these allegations. In an attempt to show respondents' actions caused the consumers economic loss, the consumers allege they were deprived of the "benefit of the bargain." However, they do not allege any false or misleading representations that could be said to have become part of the purchase and sale agreement, even if that "bargain" were viewed broadly enough to include respondents, as the dairies' agent, and the retail consumer. Any assumptions regarding treatment of the dairies'

cows were not alleged to have been expressed by the consumers to anyone, including the retailers, much less the dairy owners and their contractors. Accordingly, those assumptions could not have been part of the "bargain." (E.g., *Oakland-Alameda County Coliseum, Inc. v. Oakland Raiders, Ltd.* (1988) 197 Cal.App.3d 1049, 1058 [243 Cal.Rptr. 300].)

In their opening brief, the consumers expand on their theory that respondents' actions caused them injury. However, the expanded allegations show, in essence, what might be called "moral injury." That is, even though the milk itself was not of inferior physical quality, the violation of anticruelty laws in raising the calves "tainted the dairy products sent into the stream of commerce," according to appellants' reply brief.

█ It is possible that this "taint" caused by illegal conduct someplace in the dairy industry would have sufficiently stated a cause of action under the unfair competition law before it was amended in 2004.[8] Under the revised law, however, only the Attorney General and certain other public officials can sue on behalf of the public at large. Other persons are permitted to sue, as noted, only if they have suffered "injury in fact *and* [have] lost money or property." (Bus. & Prof. Code, § 17204, italics added.) This language discloses a clear requirement that injury must be economic, at least in part, for a plaintiff to have standing under Business and Professions Code section 17204. Here, the consumers had the benefit of their bargain—that is, they received dairy products that were not of inferior quality. Any injury they suffered upon learning "the truth" about industrial dairy farming was not economic.

We conclude the trial court correctly sustained respondents' demurrer to the consumers' cause of action: The consumers did not allege, and have not shown they could allege, economic injury necessary to give them standing under Business and Professions Code section 17204.

---

[8] "California law previously authorized any person acting for the general public to sue for relief from unfair competition. [Citations.] [Fn. omitted.] After Proposition 64, which the voters approved at the November 2, 2004, General Election, a private person has standing to sue only if he or she 'has suffered injury in fact and has lost money or property as a result of such unfair competition.' " (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227 [46 Cal.Rptr.3d 57, 138 P.3d 207].) Under the previous law, "for injunctive relief, it [was] necessary only to show that 'members of the public are likely to be deceived' " by defendant's wrongful conduct. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211 [197 Cal.Rptr. 783, 673 P.2d 660] [applying a previous version of Bus. & Prof. Code, § 17204].)

## Disposition

The judgment is affirmed. Respondents are awarded costs on appeal.

Harris, J., and Levy, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 14, 2008, S162093.