Filed 9/9/25  Morris v. Ziegler CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| P. KEVIN MORRIS, | B333812 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23SMCV01418) |
| v. | |
| GARRETT ZIEGLER et al., | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| Defendants and Appellants. | **[NO CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed herein on August 14, 2025, be modified as follows:

On page 2, the first paragraph, line 1 of the first sentence, the name "Garret Ziegler" is deleted and replaced with "Garrett Ziegler", so the sentence now reads:

> P. Kevin Morris (Morris) sued Garrett Ziegler (Ziegler) and ICU, LLC doing business as Marco Polo (Marco Polo) (collectively defendants), asserting five causes of action.

On page 3, the third paragraph, second sentence, the phrase "then-President" is deleted and replaced with "President", so the sentence now reads:

> In 2019, he began representing Biden, the son of President Joseph Biden.

There is no change in the judgment.

Defendants and appellants' petition for rehearing is denied.

_____

LUI, P. J.          ASHMANN-GERST, J.          CHAVEZ, J.

Filed 8/14/25  Morris v. Ziegler CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| P. KEVIN MORRIS, | B333812 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23SMCV01418) |
| v. | |
| GARRETT ZIEGLER et al., | |
| Defendants and Appellants. | |

APPEALS from an order of the Superior Court of Los Angeles County.  Mark H. Epstein, Judge.  Affirmed in part, reversed in part and remanded with directions.

Early Sullivan Wright Gizer & McRae, Bryan M. Sullivan and Zachary C. Hansen, for Plaintiff and Appellant.

Jennifer L. Holliday for Defendants and Appellants.

————————————————

P. Kevin Morris (Morris) sued Garret Ziegler (Ziegler) and ICU, LLC doing business as Marco Polo (Marco Polo) (collectively defendants), asserting five causes of action. Morris's claims arise from allegations that defendants impersonated a Democratic fundraiser to obtain personal information about Morris's client, Hunter Biden (Biden), and the then-emerging political and legal controversy surrounding his laptop (the Biden laptop).

Defendants moved to strike the entire complaint pursuant to Code of Civil Procedure section 425.16, California's anti-SLAPP statute.[1] The trial court partially granted and partially denied defendants' motion, striking one of Morris's five claims. Both parties appeal.

We affirm the trial court's order in all respects but one. The court allowed Morris's civil harassment claim to go forward, but we find that claim lacks the minimal merit required to survive an anti-SLAPP motion. Accordingly, we reverse the order insofar as it denies relief on civil harassment, and remand with directions to strike that claim from the complaint.

---

[1] "A 'SLAPP' is a '"strategic lawsuit against public participation"' [citation], and special motions to strike under [Code of Civil Procedure] section 425.16 are commonly referred to as '[a]nti-SLAPP motions' [citation]." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1007, fn. 1 (*Bonni*).)

# BACKGROUND

I. *Facts*[2]

   A. <u>The parties</u>

Ziegler worked as a political aide and White House staff member during President Donald Trump's first administration. In 2020, Ziegler transitioned to a private-sector career as an activist, publishing online exposés about President Trump's political opponents and their associates.

In July 2021, Ziegler founded Marco Polo, which he describes as "a research group whose mission is to expose corruption and blackmail." Ziegler distributes his exposés through Marco Polo's Web site, as well as its associated pages on various social media platforms.[3]

Morris is an attorney. In 2019, he began representing Biden, the son of then-President Joseph Biden.

   B. <u>Ziegler targets Morris; a fight ensues</u>

In May 2022, several news outlets reported that Morris was financially supporting Biden. On May 19, 2022, Ziegler—using the name of a major fundraiser for the Democratic party, Jon Cooper (Cooper)—began texting Morris for information about

---

[2] We draw these facts from Morris's complaint and admissible evidence submitted in connection with the anti-SLAPP motion. (See Code Civ. Proc., § 425.16, subd. (b)(2) [in adjudicating an anti-SLAPP motion, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based"].)

[3] Ziegler is the sole member of Marco Polo.

3

Biden.[4]  Believing that "Cooper" wanted to help Biden, Morris gave him "information and analyses" about the Biden laptop.

On May 29, 2022, "Cooper" texted an image of a cartoon purple squid perched atop planet Earth, circled by the words "Marco Polo" and "NOTHING IS BEYOND OUR REACH."  He then texted that Morris "ha[d] given us plenty.  Thank you!"  Morris immediately began referring to "Cooper" as "Garrett[,]" apparently realizing that he was actually communicating with Ziegler.

Morris and Ziegler then began antagonizing each other over text.  At this point, Ziegler demanded that Morris "immediately cease and desist any and all further threats and/or harassing messages, communications and [similar] activities of any kind[,]" and informed Morris that he would "document[] all communications for potential civil, criminal, and historical purposes."

Morris responded with a series of insults and invectives, including the following threat of legal action:  "We have 8 [Southern District of New York (SDNY)] prosecutors on our team.  [¶]  All this took was a phone call.  [¶]  8 lawyers with 10 + years as [Assistant United States Attorneys] in SDNY. . . .  [¶]  . . .  [¶] You're going to prison and we're going to get all of the money your family has and you will work for us for the rest of your life.  [¶]  You'll come to my house everyday and wash my car.  [¶]  . . . [¶]  . . .  We will follow you to the ends of the earth."

---

[4]      Ziegler denies that he was the person impersonating Cooper, attributing this operation to an independent, unnamed "whistleblower."

4

C.   Defendants' publications

Within roughly 75 minutes of sending the initial "Marco Polo" image to Morris on May 29, 2022, Ziegler posted a screenshot of the message on social media.[5]

The following day, Ziegler posted additional portions of his text message conversation with Morris on Truth Social, saying that he "[j]ust got threatened by . . . Biden's attorney and fixer, . . . Morris."

Ziegler also distributed Morris's address and phone number to his social media followers; shortly after telling his followers about "MPolo's first move[,]" Ziegler said that "[w]e will be sending our Report" on the Biden laptop "to Morris at his home[,]" and solicited people to hand out flyers about Morris near his home. On the internet messaging service Telegram, users in Ziegler's feed suggested that they could help by calling and texting Morris en masse, and driving to his home. A few said that they had already begun calling him.

In October 2022, Marco Polo published a 644-page report about the Biden laptop. The report, which was widely reported on, included excerpts of Ziegler and Morris's text exchange, as well as photos of Morris and his family members.

Morris alleged that after these publications, he was "continually harassed via phone calls by numerous different people[,]" and feared people "driving past his houses."

II.   *Morris's Complaint*

On April 3, 2023, Morris sued Ziegler and Marco Polo for (1) harassment in violation of section 653.2 of the Penal Code

---

[5]   The text message was sent at 10:42 p.m. on May 29; the screenshot was posted to social media sometime before midnight.

(i.e., doxing);[6] (2) civil harassment; (3) criminal impersonation in violation of section 529 of the Penal Code; (4) false light; and (5) intentional infliction of emotional distress (IIED). Morris sought both injunctive relief and monetary damages.

## III. *Defendants' Anti-SLAPP Motion*

On June 20, 2023, defendants filed an anti-SLAPP motion seeking to strike Morris's complaint in its entirety. Morris opposed the motion. The parties argued the motion across two hearings in July 2023.

## IV. *Trial Court's Ruling*

On October 13, 2023, the trial court issued an order partially granting and partially denying defendants' anti-SLAPP motion. The court found that while Morris's claims arose from protected activity, he demonstrated a probability of prevailing on four of his five claims (i.e., civil harassment, criminal impersonation, false light, and IIED). The court struck Morris's remaining claim, ruling that the criminal statute prohibiting doxing (Pen. Code, § 653.2) does not provide a private right of action, and thus cannot be pursued in a civil suit.

## V. *Appeals*

Defendants timely appealed from the partial denial of their anti-SLAPP motion. Morris filed a cross-appeal challenging the partial grant of the motion.

---

[6]     "'Doxing' is a relatively recent Internet-based form of harassment that involves posting a target's private personal information online so it can be used by other parties—perhaps the poster's supporters or internet 'trolls'—to attack the targeted individual." (*Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 145, fn. 1.)

6

## DISCUSSION

I.  *Anti-SLAPP Motion*

   A.  Applicable law and standard of review

   "Familiarly known as the anti-SLAPP statute, [section 425.16 of the Code of Civil Procedure] . . . allows defendants to seek early dismissal of unmeritorious claims arising from protected speech and petitioning activities.  [Citation.]"  (*Bonni*, *supra*, 11 Cal.5th at p. 1004.)

   The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (Code Civ. Proc., § 425.16, subd. (b)(1).)

   "[A] trial court tasked with ruling on an anti-SLAPP motion must ask two questions:  (1) has the moving party 'made a threshold showing that the challenged cause of action arises from protected activity' [citation], and, if so, (2) has the nonmoving party 'established . . . a probability that [it] will prevail' on the challenged cause of action by showing that the claim has 'minimal merit' [citations]?"  (*Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 887.)

   "We review the trial court's disposition of an anti-SLAPP motion de novo."  (*Tukes v. Richard* (2022) 81 Cal.App.5th 1, 11.) "[I]n the 'summary-judgment-like procedure' of a special motion to strike we do not weigh evidence or resolve conflicting factual claims[,]" and "must draw all reasonable inferences from the

7

evidence in favor of [Morris] as the plaintiff." (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 720 (*Lee*).)

We also review de novo any underlying questions of statutory interpretation. (*Santa Clarita Organization For Planning the Environment v. County of Los Angeles* (2024) 105 Cal.App.5th 1143, 1154 (*Santa Clarita Organization*).)

B.    Analysis

Both parties agree that Morris's claims arise from protected activity. Accordingly, our inquiry on appeal is limited to whether Morris's claims have the minimal merit required to survive an anti-SLAPP motion.

When evaluating a claim for minimal merit, we assess whether the plaintiff has ""demonstrate[d] that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited[.]"" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89 (*Navellier*).)

As discussed below, we conclude that the trial court properly struck Morris's doxing claim but should have also struck Morris's civil harassment claim. The court properly allowed the remaining three claims to go forward.

1.    *The trial court properly struck the doxing claim*

Morris sued defendants for doxing in violation of section 653.2 of the Penal Code.[7] The trial court struck his claim because

_____

[7]    All statutory references in this section are to the Penal Code unless otherwise indicated.

Section 653.2, subdivision (a) makes it a misdemeanor for a person who "intend[s] to place another person in reasonable fear for his . . . safety, or the safety of [his] . . . immediate family" to, "for the purpose of imminently causing that other person unwanted physical contact, injury, or harassment by a third

8

section 653.2 does not provide for a private right of action, rendering Morris's claim "legally [in]sufficient . . . to sustain a favorable judgment[.]" (*Navellier*, *supra*, 29 Cal.4th at p. 89.) On independent review, we agree.

"[A] criminal statute can expressly or impliedly give rise to a private right of action for its violation[.]" (*Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, 141 (*Animal Legal*).) The question of whether such a right exists is "primarily one of legislative intent. . . . If we determine the Legislature expressed no intent on the matter either way, directly or impliedly, there is no private right of action (*Moradi–Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305 (*Moradi–Shalal*) (en banc)), with the possible exception that compelling reasons of public policy might require judicial recognition of such a right. [Citations.]" (*Animal Legal*, *supra*, 160 Cal.App.4th at p. 141.)

Section 653.2 does not "contain '"clear, understandable, unmistakable terms,"' which strongly and directly indicate that the Legislature intended to create a private cause of action." (*Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 597 (*Lu*).) Nor does the legislative history of section 653.2 suggest any intent to create a private right of action.[8] (See *Moradi-*

---

party[,]" "electronically distribute[] [or] publish[] . . . personal identifying information . . . which would be likely to incite or produce that unlawful action[.]"

[8] Morris argues that the legislative history of section 653.2 "expressed a desire to permit a private right of action" by "leaving open the question" of whether civil sanctions would be equally effective at deterring doxing. But that is not a "clear indication"

*Shalal, supra*, 46 Cal.3d at p. 300 ["The fact that neither the Legislative Analyst nor the Legislative Counsel observed that the new act created a private right of action is a strong indication the Legislature never intended to create such a right of action"].)

Further, no related statute shows implied legislative recognition of a private right of action. The only statute that provides for civil enforcement of comparable conduct is section 6218 of the Government Code,[9] which expressly limits relief to "[a] reproductive health care services patient, provider, or assistant whose personal information or image is made public[,] . . . or any individual entity or organization authorized to act on their behalf." (Gov. Code, § 6218, subd. (a)(2).) This limited civil remedy, narrowly drawn to protect specific persons, does not imply legislative recognition of a general private right of action for all victims of misdemeanor doxing.[10]

---

of legislative intent to create a private right of action in section 653.2. (*Lu, supra*, 50 Cal.4th at p. 600.)

[9] In relevant part, that statute prohibits a person from "knowingly publicly post[ing] . . . on internet websites or social media[] the personal information or image of any reproductive health care services patient, providing or assistant, or other individuals residing at the same home address with the intent to[,]" among other things, "[i]ncite a third person to cause imminent great bodily harm to the" targeted individual. (Gov. Code, § 6218, subd. (a)(1)(A).)

[10] This is especially true where, as here, the two doxing statutes do not reference each other and contain different definitions of the prohibited act. (Contra, *Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1225 ["The Legislature's intent to allow a civil action for violation of" a penal statute "is made abundantly clear where" a civil procedure statute "specifically

Morris urges that section 653.2 necessarily provides a private right of action because a "[v]iolation of a statute embodying a public policy is generally actionable even though no specific civil remedy is provided in the statute" itself and "[a]ny injured member of the public for whose benefit the statute [was] enacted may bring the action." (*Angie M.*, *supra*, 37 Cal.App.4th at p. 1224.) This isolated language is taken directly from *Michael R. v. Jeffrey B.* (1984) 158 Cal.App.3d 1059 (*Michael R.*), which "appl[ies] a too-broad standard for implying a private right of action" that "has [since] been superseded by the legislative intent approach reiterated in *Moradi-Shalal*."[11] (*Animal Legal*, *supra*, 160 Cal.App.4th at p. 144.)

Alternately, Morris argues that the trial court should have recognized a private right of action in section 653.2 because, in Morris's view, he will be left without a remedy if he cannot pursue a civil claim under that statute.[12]

---

defines" the civil action "to include acts prescribed by" the penal statute].)

[11] Moreover, *Michael R.* did not involve direct civil enforcement of a criminal statute; "*Michael R.* was a negligence action," in which the penal statute was used not as a source of civil liability, but as the standard establishing the tortfeasor's duty. (*Animal Legal*, *supra*, 160 Cal.App.4th at p. 144.)

[12] The cases that Morris cites for this proposition (*Faria v. San Jacinto Unified School Dist.* (1996) 50 Cal.App.4th 1939; *Jacobellis v. State Farm Fire & Casualty Co.* (1997) 120 F.3d 171) have been found unpersuasive by our Supreme Court (*Lu*, *supra*, 50 Cal.App.4th at p. 603, fn. 8).

When, as here, "'neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion.'" (*Lu*, *supra*, 50 Cal.4th at p. 601.) Morris does not meet that heavy burden here, as our holding "does not necessarily foreclose the availability of other remedies[,]" including the IIED claim pursued by Morris in this action.[13] (*Id.* at p. 603.) And "'nothing we hold herein would prevent the Legislature from creating additional civil or administrative remedies, including . . . a private cause of action for violation of'" section 653.2. (*Id.* at p. 604.)

   2. *The trial court should have struck the civil harassment claim*

  On appeal, defendants challenge only the legal sufficiency of Morris's claim for civil harassment, contending that California law "does not recognize a private cause of action for civil harassment for money damages, and harassment claims must be pursued through a restraining order under Code of Civil Procedure [section] 527.6 using the mandatory Judicial Council form."[14] Because Morris sought both injunctive relief *and* monetary damages, and failed to follow statutory procedures

---

[13] On appeal, Morris characterizes his IIED claim as a remedy for, among other thing, the same conduct targeted by his doxing claim (i.e., that defendants unlawfully "post[ed] Morris'[s] contact information on the internet[,]" causing their followers to harass Morris).

[14] All statutory references in this section are to the Code of Civil Procedure unless otherwise indicated.

12

required for injunctive relief, defendants insist that his claim fails.[15]

"Section 527.6, subdivision (a)(1) enables a victim of 'harassment' to 'seek a temporary restraining order and an order after hearing prohibiting harassment.'" (*Olson v. Doe* (2022) 12 Cal.5th 669, 677 (*Olson*).) The provision was designed to "supplement existing causes of action for emotional distress and invasion of privacy available to a victim of harassment" (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1260 (*Huntingdon Life Sciences*) by "'provid[ing] an expedited procedure for enjoining acts of 'harassment''" in order ""'to provide quick relief to harassed persons[]''" (*Olson, supra*, 12 Cal.5th at p. 677). To "'provide a quick, simple and truncated procedure'" for obtaining injunctive relief from ongoing harassment "section 527.6 from its inception has required the Judicial Council to develop forms for use in these proceedings [citations], and current law requires that . . . [']their use by parties in actions brought pursuant to [section 527.6] is mandatory' (§ 527.6, subd. (x)(1))." (*Olson, supra*, at p. 678.)

This narrowly tailored statutory scheme does not create or imply the existence of a general civil claim for harassment. Indeed, our Supreme Court has held that neither the text nor legislative history of section 527.6 gives claimants the "ability to seek . . . redress of past wrongs through damages or otherwise[,]" foreclosing any statutory claim for monetary relief. (*Olson*,

---

[15] In his complaint, Morris alleges a cause of action for civil harassment without citing section 527.6. However, both below and on appeal, Morris allows that the claim arises out of that statute.

13

*supra*, 12 Cal.5th at p. 682.)  And to seek injunctive relief under the statute, a plaintiff must use the "'mandatory'" Judicial Council forms developed for that purpose.  (*Id.* at p. 678.)  "[T]his specialized statutory procedure for imminent injunctive relief" does not allow Morris to pursue a claim for civil harassment outside of its strictures.  (*Id.* at p. 682)

Morris resists this conclusion, arguing that the plain text of section 527.6 demonstrates that "the Legislature intended for plaintiffs to be able to pursue civil harassment claims under [section 527.6] even if certain procedural strictures . . . were not followed."  We are not persuaded.  The provision that section 527.6 "does not preclude a petitioner from using other *existing* civil remedies" (§ 527.6, subd. (w), italics added) confirms that "a petitioner [does not] waive[] the right to separately seek" relief for "common law torts of invasion of privacy and intentional infliction of emotional distress" merely by filing for a restraining order under section 527.6.  (*Olson*, *supra*, 12 Cal.5th at p. 682.)  It does not evince an intent for section 527.6 to provide a basis for broader civil harassment claims.

Moreover, the fact that the statute confers a discretionary right to petition (§ 527.6, subd. (a)(1), italics added) ["A person who has suffered harassment . . . *may* seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section"]) does not, without more, imply the existence of a separate general claim for civil harassment.

Morris also cites numerous cases that he purports "recognize[] . . . [section] 527.6 . . . as a basis for the cause of action of civil harassment."  All of these cases were decided before our Supreme Court's recent analysis of the statute's legislative

14

intent in *Olson*, *supra*, 12 Cal.5th 669. And in any event, none of them hold that section 527.6 authorizes pursuit of a civil harassment claim that exceeds the bounds of the statute.[16] (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 ["It is axiomatic that cases are not authority for propositions not considered"].)

Lastly, Morris repeats his prior arguments against using a legislative intent analysis to determine whether a statute provides a private right of action. (*Michael R.*, *supra*, 158 Cal.App.3d 1059.) Those arguments are irrelevant. The issue here is not whether section 527.6 creates a private right of action, but whether, under standard principles of statutory interpretation, the statute's scope is broad enough to encompass Morris's purported claim. For the reasons above, we conclude that it is not.[17]

---

[16]     *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 646 [a petition for a civil harassment restraining order per section 527.6 is a "cause of action" that can be targeted by an anti-SLAPP motion]; *Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 732 [civil harassment restraining order is a cause of action]; *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 335 [same]; *JKC3H8 v. Colton* (2013) 221 Cal.App.4th 468, 476 [mentioning the existence, but not considering the merits, of a general claim for civil harassment]; *Huntingdon*, *supra*, 129 Cal.App.4th at pp. 1249–1258 [assessing a general harassment claim's factual sufficiency and constitutionality, without considering whether it was authorized by statute].

[17]     This conclusion renders moot defendants' alternate argument that Morris's civil harassment claim, as pled, cannot withstand First Amendment scrutiny.

15

### 3. *The trial court properly found that the remaining claims survive*

#### i. <u>Criminal impersonation</u>

As relevant here, section 529 of the Penal Code provides criminal liability for "[e]very person who falsely personates another in either his . . . private or official capacity, and in that assumed character" "[d]oes any other act whereby, if done by the person falsely personated, he might . . . become liable to any suit or prosecution . . . or whereby any benefit might accrue to the party personating, or to any other person." (§ 529, subd. (a)(3).)

Morris met his burden of demonstrating minimal merit on this claim. Morris alleged—and provided text messages to support—that Ziegler contacted him, pretended to be Cooper, and used that guise to obtain private information. Ziegler revealed his ruse by texting Morris an image associated with Marco Polo, suggesting that, as Morris alleged, Marco Polo "participated in or otherwise knowingly assisted in the aforementioned conduct and activity." And Marco Polo also benefitted from Ziegler's impersonation, as it used the texts Ziegler received in its widely circulated report on the Biden laptop. These facts sufficiently substantiate Morris's claim to establish minimal merit under the anti-SLAPP law. (*Navellier*, *supra*, 29 Cal.4th at pp. 88–89.)

Defendants argue that because Ziegler denies being the person who messaged Morris under Cooper's name, Morris cannot prove his criminal impersonation claim. Defendants ignore that, when evaluating an anti-SLAPP motion, "'[t]he question is what is pled—not what is proven.' [Citation.]" (*Central Valley Hospitalists v. Dignity Health* (2018) 19 Cal.App.5th 203, 217.) We thus accept as true Morris's pleaded facts and may not weigh Ziegler's declaration against

16

Morris's allegations and supporting evidence.  (*Lee, supra*, 41 Cal.App.5th at p. 720.)

Defendants also argue that Morris's criminal impersonation claim should fail for the same reason as his doxing claim—namely, that the claim is based on a violation of a penal statute that does not provide a private right of action.  However, defendants did not raise this argument below.  And their arguments on appeal are conclusory, comprising roughly six sentences across the appellate briefs and lacking any analysis of the statute's text or legislative history.  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 (*Santa Maria*) ["In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis"].)

"Generally, issues not raised in the trial court cannot be raised for the first time on appeal[,]" including in appeals from anti-SLAPP proceedings.  (*Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 44 (*Wisner*); see also *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4h 550, 564 [""Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider"""].)  While we "have discretion to consider an issue in the first instance if it raises a question of law on undisputed facts, our Supreme Court has cautioned that such discretion should be exercised rarely[.]"  (*Wisner*, *supra*, 85 Cal.App.5th at p. 44.)  We decline to do so here.[18]

---

[18]	Our conclusion does not preclude defendants from raising this issue in future proceedings.  When litigation resumes, they will have further opportunity to test the legal sufficiency of

17

ii.    <u>False light</u>

"'False light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed.' [Citation.]" (*Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1264 (*Jackson*).)

'To defeat [defendants'] anti-SLAPP motion on [his] false light claim, [Morris], as a public figure, must demonstrate a reasonable probability []he can prove [defendants] broadcast statements that are (1) assertions of fact, (2) actually false or create a false impression about h[im], (3) highly offensive to a reasonable person or defamatory, and (4) made with actual malice."**19** (*De Havilland v. FX Networks, LLC* (2018) 21 Cal.App.5th 845, 865.)  In this context, ""'actual malice"'" means publishing statements that are either false or that create a false impression with either knowledge of or reckless disregard for falsity.  (*Jackson*, *supra*, 10 Cal.App.5th at p. 1260.)

Morris alleges that defendants selectively published his text messages to create the false impression that Morris baselessly harassed defendants to chill their scrutiny of him and his powerful political associates.  To that end, Morris submitted screenshots of multiple social media posts; in these posts, Ziegler

Morris's criminal impersonation claim.  But they have forfeited the opportunity to do so as part of their anti-SLAPP motion.

**19**    The parties agree that, for the purposes of this appeal, Morris is a public figure subject to heightened standards of proof on libel and similar claims.

accused Morris of threatening him and published a handful of Morris's text messages without context (i.e., that Ziegler provoked Morris's outbursts by impersonating Cooper for weeks to obtain confidential information).[20]  Marco Polo also published the texts—similarly devoid of context—in its widely circulated report on the Biden laptop.

The bombastic text messages are highly offensive, as is the implication that Morris improperly wielded his money and influence to silence political opponents.  And because defendants both participated in the original text thread (as described above), they knew—or, at the very least, recklessly disregarded—the false impression that would be created by publishing the messages without context.

These facts sufficiently establish that Morris's false light claim has the minimal merit required to survive an anti-SLAPP challenge.[21]  (*Navellier*, *supra*, 29 Cal.4th at pp. 88–89.)

Defendants assert, without argument or citation to authority, that Morris's evidence of malice was not sufficient to carry his anti-SLAPP burden.  We need not address this conclusory argument (*Santa Maria*, *supra*, 211 Cal.App.4th at pp. 286–287), but reiterate that on review of an anti-SLAPP motion, we cannot "weigh evidence" and "must draw all

---

[20]  Defendants urge us to disregard evidence of any posts and statements about Morris made after this lawsuit was filed.  As such evidence is unnecessary to resolve this appeal, we do not refer to it.

[21]  Our conclusion should in no way be understood as condoning the substance of Morris's text messages to Ziegler.

19

reasonable inferences from the evidence in favor of" Morris. (*Lee*, *supra*, 41 Cal.App.5th at p. 720.)

### iii.  IIED

Defendants only challenge Morris's IIED claim by reprising their unsuccessful false light arguments, contending that Morris failed to show actual malice. (See *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 265 [if "based upon the same facts as [a] cause of action for libel[,]" IIED claim against a public figure requires a showing of actual malice].) For the same reasons described above, their IIED argument fails.

### 4.  *Defendants' additional counterarguments*

Defendants raise three additional counterarguments that apply to all of Morris's claims, all of which are meritless.

First, defendants urge that all of Morris's claims are barred by the litigation privilege.[22] They are wrong. The litigation privilege "'immuniz[es] participants [in a judicial proceeding] from liability for torts arising from communications made during judicial proceedings.'" (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 116 (*Optional Capital*); see also Civ. Code, § 47.) The privilege "applies 'to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" (*Ibid.*)

Here, there are three groups of communications that give rise to defendants' liability for criminal impersonation:

---

[22]    Although defendants did not raise the litigation privilege below, we may consider it on appeal. (*Herterich v. Peltner* (2018) 20 Cal.App.5th 1132, 1139.)

(1) defendants' texts with Morris using Cooper's name, including the final text revealing their true identities; (2) defendants' social media posts containing select text messages; and (3) Marco Polo's report on the Biden laptop. Defendants argue that by explicitly threatening prosecution (i.e., texting defendants that "[w]e have 8 SDNY prosecutors on our team. [¶] . . . [¶] You're going to prison[,]" etc., Morris rendered all of these communications privileged.

Defendants fail to establish that the litigation privilege applies to any of these communications. The first group occurred before litigation was threatened. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 ["A prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration"].) And defendants present no argument as to how communications in any of the three groups served "to achieve the objects of the litigation" (*Optional Capital*, *supra*, 18 Cal.App.5th at p. 116), instead resorting to overbroad assertions that the privilege attaches to *all* communications that are in *any way* relevant to litigation. These insufficient arguments do not establish applicability of the litigation privilege. (*Santa Maria*, *supra*, 211 Cal.App.4th at pp. 286–287.)

<u>Second</u>, defendants allege that Morris did not show sufficient facts to support Marco Polo's liability for Ziegler's conduct. This argument is forfeited by defendants' failure to raise it below. (*Wisner*, *supra*, 85 Cal.App.5th at p. 44.) It also fails on the merits; as described above, Morris submitted sufficient facts to show that Marco Polo is liable for its *own* alleged involvement in his surviving claims.

Third, defendants criticize the trial court's reasons for partially denying the anti-SLAPP motion. But attacking the trial court's reasoning does "not compel reversal of the judgment . . . . [']No rule of decision is better or more firmly established by authority . . . than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason.'" (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18–19 (en banc).)

II.   *Prevailing Party Fees*

Finally, defendants argue that "[b]ecause [Morris's] claims are legally and constitutionally deficient," they "are entitled to full recovery of attorney's fees and costs." The argument exceeds the scope of their appeal.

While generally, prevailing parties in an anti-SLAPP proceeding are entitled to fees (Code Civ. Proc., § 425.16, subd. (c)), "'"a fee award is not required when the [anti-SLAPP] motion, though partially successful, was of no practical effect' . . . . [¶] Whether a partially successful cross-defendant achieved a sufficient benefit to qualify as a prevailing party lies within the broad discretion of the trial court[.]" (*Gumarang v. Braemer on Raymond, LLC* (2025) 110 Cal.App.5th 370, 388.)

In its order on the merits of defendant's anti-SLAPP motion, the trial court acknowledged that because defendants "were successful on one cause of action[,]" they could be "technically entitled . . . to fees." Defendants "state[d] they will file a motion for fees[,]" and the court directed them to focus on whether their partial success "'achiev[ed] any practical benefit[.]'"

The appellate record contains neither a fee motion nor an award of fees; it appears that the issue is still pending in the trial court. Accordingly, defendants' fee claim is unripe for appellate

22

review.  (*Redondo Beach Waterfront, LLC v. City of Redondo Beach* (2020) 51 Cal.App.5th 982, 1000.)

## DISPOSITION

The trial court's order is affirmed in part and reversed in part.  We remand the matter and direct the trial court to strike Morris's claim for civil harassment from the complaint.  In all other respects, the order is affirmed.  The parties shall bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ